A. J. McColl,' Appellant, v. Rally and Fisher et al.,
Appellees.

**Intoxicating liquors:** SALOONS: CONSENT OF PROPERTY OWNER: FRAUD.
1  The construction of a board partition in a room occupied for
saloon purposes, leaving an unoccupied space, for the sole pur-
pose of removing the place of business more than fifty feet
distant from the property of another owner who refused to
consent to the opening of a saloon at that place, was a fraud-
ulent subterfuge to evade the law.

**View from street.**  The location of a saloon in the basement of a
2  building with the bar so situated that the same is not in plain
view of pedestrians using the street or sidewalk in the ordinary
manner, is not in compliance with the statute.

**Entrance.**  A basement saloon so constructed that the only en-
3  trance is through a long hall after descending several steps
from the street, does not have an opening " on a public street "
as required by statute.

*Appeal from Polk District Court.*— Hon. Hugh Brennan,
Judge.

Wednesday, June 14, 1905.

Suit in equity to permanently enjoin an alleged liquor
nuisance.    An application for a temporary writ was heard
before the court, and finally denied.    Plaintiff appeals.—
*Reversed.*

*Evans & Evans* and *Dunshee & Dorn,* for appellant.

*E. T. Morris, Carr, Hewitt, Parker & Wright,* and
*John McLennan,* for appellees.

Deemer, C. J.— The defendants Rally & Fisher are
operating what is called a " basement saloon " in the city
of Des Moines.    The so-called " Mulct Law " is in force in

Polk county, and the questions in the case involve a consideration of that law, and of defendants' compliance therewith. The property in which the business is conducted is known as 201 West Fifth street, situated upon lot 4, block 21, of the original town of Ft. Des Moines. Defendant Polk is the owner of the lot, and of the building situated thereon. The lot and building have a frontage of twenty-four feet on West Fifth street. The building is three stories in height, with a basement, which we shall presently describe more at length. The building extends east and west, and immediately to the north thereof, and on the adjoining lot, is another brick building, forty-four feet in width, the owner of which is a nonresident. Immediately north of this last-named building is another brick structure, occupied by the Iowa Loan & Trust Company. There is no evidence as to who holds the legal title to this building. The saloon in question is located in the basement of the Polk building. Immediately south of this building there is an alley sixteen or eighteen feet wide, running east and west, and immediately south of that is the United States government post office.

Plaintiff contends that the defendants did not secure the consent of all resident freeholders owning property within fifty feet of the building where the saloon is carried on. It appears from the evidence that it is forty-five feet from the south wall of the building occupied by the Iowa Loan & Trust Company to the north wall of the building in which the saloon is located. The north wall of this latter building is two feet thick. The evidence shows that south of the alley already described is the post-office building, used by the United States government as a post office and for other federal offices. There is no other showing as to the title to this property. After many fruitless attempts to secure the consent of property owners within fifty feet north of the building in which the saloon is located, the defendants concluded to construct an inside partition in the basement thereof, which should be fifty feet from the Iowa Loan &

Trust Company building, and in pursuance thereof they constructed a partition, made of ceiling lumber three-fourths of an inch in thickness, four feet and nine inches from the inside of the north basement wall of the building; thereby cutting off four feet and nine inches of the north side of the basement room, and converting it into dead, unoccupied, and unoccupiable space.   The owner of this space thereupon gave his consent to the establishment of the saloon.   This was evidently done in order to avoid the necessity of securing the consent of owners within fifty feet of the main north wall of the building.   The room in which the business is now conducted is seventeen by fifty feet.

No one, we think, would contend that this three-fourths inch partition was made in good faith, or for any other purpose than of defeating the provisions of the mulct law.   The

1. SALOONS: consent of property owner; fraud.

space partitioned off is unfit for use for any purpose, and is not in fact used.   The whole transaction, as it seems to us, was a mere subterfuge to avoid the plain provisions of section 2448 of the Code.   Even transfers of small strips of land for the purpose of avoiding the law have been held invalid.   *Eagle Co. v. City of Davenport,* 101 Iowa, 493.   The partitioning of the property in this case was not designed to be of any benefit to the owner of the property, or of any benefit to the lessees of the building, in enabling them to better conduct their business.   The part partitioned off from the main room was of no value to any one.   In law, it was a fraudulent attempt to defeat the plain objects and purposes of the statute.   *State v. Mateer,* 94 Iowa, 42, is not in point.   There was no question of fraud in that case. The opinion shows that the part partitioned off from the main room was usable in character, and there was no intent on the part of the owner to avoid the provisions of the mulct law.   In legal effect, the entire basement involved in the present case was used for saloon purposes.   The partition answered no purpose save as a screen to avoid the law.   The

case should be treated, therefore, as if there were no partition of the basement, and a temporary writ of injunction should have been ordered as prayed.    It would be a reproach to the administration of justice if such a subterfuge as was here attempted should be allowed to prevail.

II.    Another contention made by appellant is that the bar established by the saloonkeepers was not " in plain view of the street."    The statute, among other things, says that the business shall be carried on ·in a single room, opening upon a public business street, and " that the bar where liquors are furnished shall be in plain view from the street, unobstructed by screens, blinds or any other device."    The floor of the basement saloon in the instant case is five feet below the sidewalk.    True, there are windows above the sidewalk, but the tops of these windows are but four feet above the walk.    The bar commences thirty-five feet from the nearest part of the sidewalk.    It is manifest, no matter what witnesses may say, that a man of ordinary height, walking along the sidewalk in the usual way, could not see the entire bar.    If he were close to the building, he could not see any of it without stooping. Clearly the bar in this case is not in plain view from the street.    True, a man, by starting at the building and going out into the street, could see the entire length of the bar, but this does not meet either the letter or the spirit of the law. " Plain view of the bar " means plain view from the street or sidewalk used by pedestrians in the usual and ordinary way.    To our minds the oral testimony clearly establishes the fact that the bar is not " in plain view," within the meaning of that term as used in the statute.    The very object of this provision was to prevent the establishment of saloons in basements, the second stories of buildings, or in other places not open to view by those passing on the sidewalks or streets.

We doubt, too, if the entrance to this saloon, or the door thereto, was upon a public street.    Surely a door at

2. View from street.

the end of a long hall is not an entrance upon a street. The entrance to the room in question was not, and could not be, upon a public street. Steps were necessary to reach it, and in this case there are many.

3. ENTRANCE.

Other matters are argued by counsel, but sufficient has been said to indicate that we disagree with the trial court in its construction of the statute involved, and that, in our opinion, a temporary writ of injunction should have issued as prayed. The case must therefore be reversed and remanded for an order in harmony with this opinion.— *Reversed* and *remanded*.