## DILLOW v. WARFEL.

1. **Subrogation**: LAND SOLD ON TIME CONTRACT: PAYMENT OF PURCHASE MONEY BY ASSIGNEE. D. and wife owned two forty acre tracts of land under contracts of purchase. D., acting for himself, and as agent for his wife, but without her authority, sold the land and assigned the contracts to W., who went into possession. In an action by the vendors to foreclose the contracts, there was judgment against D. and wife for the purchase money, but W. intervened, and it was ordered, among other things, that he pay into court a certain sum, and that upon payment of the same the vendors execute to him a warranty deed for the land. D.'s wife was, for certain reasons, not bound by the judgment and decree. *Held* that she was the owner of the undivided one-half of the land during all the time that W. was in possession, and entitled to rents and profits accordingly; that from the time W. paid his money into court under the decree he was entitled to be subrogated to all the rights of the vendors as against D.'s wife, and that his relation to her was that of a mortgagee in possession, and that a judgment and decree of foreclosure were properly entered against her in favor of W. for one-half of the judgment and costs in the former action, less her share of the rents and profits during the time W. had been in possession.

*Appeal from Union District Court.*

MONDAY, MARCH 7.

THIS is an action in equity, involving conflicting claims of the parties to certain real estate. After the issues were made up, the cause was referred to a referee. The referee heard the evidence, and reported the facts and his conclusions of law to the court. Both parties filed exceptions to the report. The court modified the report and entered a decree. The plaintiff appeals.

*Higbee & Hanna,* for appellant.

*James G. Ball,* for appellee.

ROTHROCK, J.—The case is very much involved in its facts, and it appears to be necessary to an understanding of the controversy to set out the report of the referee. It is as follows:

"On May 29, 1879, R. H. and R. A. Dillow, who were then husband and wife, and living together as such, purchased

Dillow v. Warfel.

of T. J. Potter and C. M. Levy the N. W. $\frac{1}{4}$ of N. E. $\frac{1}{4}$, and N. E. $\frac{1}{4}$ of N. W. $\frac{1}{4}$, of section 22, and the S. W. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ of section 15, all in township 73, range 30, Union county, Iowa, at which time the real estate contract herewith returned was executed and delivered by the parties. In making this purchase, R. H. Dillow acted for himself, and as the agent of his wife. In the following spring the Dillows took possession of said real estate under and by virtue of said contract of purchase.

"II. On the thirteenth day of June, 1880, the Dillows, by R. H. Dillow, acting for himself and as the agent of his wife, R. A. Dillow, sold the N. E. $\frac{1}{4}$ of the N. W. $\frac{1}{4}$ of section 22, above described, to W. A. Maxwell, and assigned and conveyed to him in writing all their interest in said tract, which they held under the Potter-Levy contract.

"III. On the fourth day of February, 1882, the Dillows, who had ceased to live together as husband and wife, sold the remaining eighty acres of said land to Amzey Courter, and conveyed the same to him by an assignment in writing of the Potter-Levy contract, which assignment was executed personally by each of the Dillows.

"IV. Owing to the failure of said Courter to comply with his contract of purchase with the Dillows, the above contract was rescinded by the parties, and said Courter, on the eleventh day of February, 1882, reassigned said contract to R. H. Dillow. Said assignment, as originally drawn, seems to have been made to Reuben H. Dillow and R. A. Dillow, but the latter name has been erased from the instrument, and I am unable to say from the evidence whether or not this erasure was made before or after its execution; but I find, as a matter of fact, that it was intended as a rescission of the contract mentioned in number three, and it, in effect, places the title to the land in the same position it was in before the making of the contract mentioned in number three.

"V. On the reverse side of the Courter assignment there appears an assignment of said contract from R. H. Dillow

to R. A. Dillow, dated February 11, 1882; but I find that this assignment was not based on any consideration, and no delivery of the same was ever made, and the same is without any legal force or effect.

"VI. From the above, after making these various assignments, I find that the interest in said land conveyed by the Potter-Levy contract was owned as follows: The N. E. ¼ of the N. W. ¼ of section 22, by W. A. Maxwell; and the remaining eighty acres was owned jointly by R. H. and R. A. Dillow.

"VII. On August 3, 1882, Potter and Levy commenced an action in the circuit court of Union county, being case numbered 3,249, in which R. H. and R. A. Dillow were the only defendants. In said action plaintiffs ask for judgment for the amount due on their contract, and the foreclosure of the same, etc. The Dillows, being served by personal service, appeared by J. H. Copenheffer, attorney, and filed their answer in said cause. The appearance of said attorney for R. A. Dillon, she claims, was wholly unauthorized, and, further, that it has already been adjudicated by the circuit court that such appearance was unauthorized; and I find as a matter of fact that this latter claim is established by the evidence.

"VIII. On September 18, 1882, W. A. Maxwell appears by J. H. Copenheffer, attorney, and files in said cause his petition of intervention, setting up his claim to the forty-acre tract of said land, purchased by him of the Dillows; and the cause was continued to the March, 1883, term of court.

"IX. On March 5, 1883, the Dillows, by R. H. for himself, and claiming to act as the agent of R. A., assigned the said contract, and sold the eighty acres held by them under the same to the defendant Warfel, for the agreed price of $2,500; said Warfel assuming to pay, as a part of the consideration, the amount due Potter and Levy on said contract. As to this conveyance, R. A. Dillow insists that she never

Dillow v. Warfel.

received any part of the purchase price, nor ever authorized R. H. Dillow to make said contract and sale for her; and I find, as a matter of fact, that R. H. Dillow had no authority from R. A. Dillow to make this contract or sale of her interest in said land, and that she received no part of the consideration therefor, except what was paid by defendant to Potter and Levy.

"X. On the same day W. A Maxwell sold the forty acres of said land held by him to defendant Warfel, and executed the proper assignment of his contract and interest in the same to defendant.

"XI. On March 12, 1883, defendant Warfel, by J. H. Copenheffer, attorney, filed his petition of intervention in the circuit court in the Potter-Levy foreclosure case, setting up his purchases and assignments from the Dillows and Maxwell, and offering to pay into court the amount due Potter and Levy, and asking that they be required to execute to him a deed for the premises upon his payment of said amount.

"XII. On the same day, a judgment and decree were rendered in said cause, which gave the plaintiffs judgment against R. H. and R. A. Dillow, for the sum of $1,789, the amount due on said real estate contract, and the further sum of $150, attorneys' fees, and, among other things in said decree, was the following: 'And it is further ordered that the plaintiffs have judgment against the intervenors, W. A. Maxwell and A. M. Warfel, for costs of their proceedings in intervention, and that plaintiffs have a foreclosure of said real estate contract against all defendants and intervenors impleaded in this cause; and it is further ordered that the intervenor A. M. Warfel pay into this court the sum of $1,887.89, according to the prayer of his said petition of intervention, which said sum shall be applied on and in satisfaction of the above judgment; that on the payment of the said sum of money, as aforesaid, to the clerk of this court, for the use and benefit of plaintiffs, it is further ordered that

the plaintiffs make, execute and deliver to the said clerk for the intervenor A. M. Warfel a warranty deed for the real estate described in the contract, set forth in the intervenor Warfel's petition; that, should the plaintiffs fail or refuse to make, execute and deliver said deed of conveyance as above designated within five days after the said money shall have been paid into court, then B. T. Nix, the clerk of this court, is hereby authorized to execute said conveyance as a commissioner of this court, and deliver the same to A. M. Warfel; that, on the failure of said intervenor Warfel to pay the said sum, plaintiffs to have special execution,' etc.

"XIII.   In accordance with the provisions in said decree, defendant Warfel paid the amount of judgment into court, and, on the twentieth day of March, 1883, received a warranty deed from Potter and Levy for the land, and immediately entered into the possession of the same, and has occupied and used the same as a farm ever since.

"XIV.   On July 17, 1883, R. A. Dillow filed in the circuit court her motion to reform said decree, and served notice of the filing of said motion on Patterson & Ball, attorneys for plaintiffs in said cause; and said motion was tried upon evidence introduced before the circuit court. On the twenty-second day of September, 1883, Jas. G. Ball appearing for plaintiffs, and Higbee & Hanna for defendant, R. A. Dillow, said motion was sustained by the court, which in substance expunged from said decree the portion thereof set out in number twelve above, and modified the same so as to give plaintiffs judgment against R. A. Dillow for $1,731.87, and the further sum of $150, attorney's fee, and costs of suit taxed at ——— dollars, and that said judgment draw interest at the rate of ten per cent per annum from March 12, 1883; and further decreeing the foreclosure of said real estate contract, and ordering the sale of the premises under special execution to satisfy the judgment, and expressly declaring that the decree heretofore entered should not be held to in any manner affect defendant R. A.

Dillow's equity of redemption in and to said property; and that all that portion of the decree set out in number twelve should in no manner affect the defendant R. A. Dillow.

"XV. Subsequent to the modification of said decree by the circuit court, plaintiffs Potter and Levy filed their motion to modify the modified decree, and the same was submitted to the court, and by him taken under advisement, and overruled on the thirtieth day of December, 1884.

"XVI. This action was commenced on the tenth day of April, 1884; but the pleadings have been properly amended from time to time, in harmony with the ruling of the circuit court, on motion to modify the decree.

"XVII. I find that defendant Warfel acted in good faith in paying his money into court under the original decree, and receiving the deed to said lands.

"XVIII. Defendant, on the twentieth day of May, 1885, filed an amendment to his answer, asking in his prayer, among other things, to be subrogated to all the rights of Potter and Levy in the land in controversy, as against plaintiff.

XIX. That the rental value of the whole of said real estate is $225 per annum; and defendants have occupied and used the same for the years 1883, 1884 and 1885.

"From the foregoing facts I find the following conclusions of law: (1) That, at the time of the rendition of the judgment and decree, originally in favor of Potter and Levy, plaintiff R. A. Dillow was the owner of the undivided half of the N. W. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$ of section 22, and the S. W. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ of section 15, all in township 73, range 30, by contract of purchase from Potter and Levy; (2) that since that time she has been the owner of an equity of redemption in said described land, and entitled to the rents, issues and profits thereof; (3) that from the time defendant paid his money into court under the original decree, he is entitled to be subrogated to all the rights of Potter and Levy in said land, as against the plaintiff, and that his relation to the same since taking the possession thereof has been that of a

mortgagee in possession, and that he should account to plaintiff for the rents and profits of an undivided one-half of the land described in number one, last above, which, assuming the land to be of the same general character and rental value, would be $75 per annum, aggregating $225 for the three years which he has been in possession. I recommend judgment and decree be entered by the district court accordingly.

"All of which is respectfully submitted.

"THOS. L. MAXWELL, Referee."

The plaintiff moved the court to correct the report as to the facts by finding that the alleged sale of the forty acres to Maxwell was adjudicated against him in the case of *Potter and Levy v. Dillow et al.*, and to modify the report throughout in such way as that R. H. and R. A. Dillow be held to be the joint owners of the whole 120 acres, and to compel Warfel to account for the rents and profits of all the land, instead of only two-thirds thereof. The court overruled this motion, and we think the ruling was correct. We do not understand that it was at any time adjudged that Maxwell did not purchase the forty acres from the plaintiff and her husband. It is true, the court entered judgments against the intervenors Maxwell and Warfel for the costs of intervention; but, in the same decree, Warfel was authorized to pay the whole debt, and receive a deed of the land from Potter and Levy. It is true that this decree was afterwards modified on motion; but Warfel was not made a party to that proceeding. He paid the money required to be paid both for the eighty acres he claimed and for the forty acres claimed by Maxwell, to whose rights he succeeded by assignment. He became the assignee of Maxwell before the decree; and the decree authorizing him to pay the purchase money and receive the deed was in pursuance of his offer to make payment as assignee of the Dillows and Maxwell. That decree has never been modified in any proceeding to which Warfel was a party.

On the motion of the defendant, the court modified the report of the referee so that the plaintiff should be required to pay one-half of the judgment rendered against her, and one-half of the costs of the former action, and an account of the rents and profits of the land was made, and a judgment rendered in favor of Warfel for the balance, and a decree of foreclosure was entered, and the land ordered sold to satisfy the judgment, interest and costs. It appears to us that the decree thus entered is a fair and equitable adjustment of the rights of the parties, for the reason that, when Warfel paid for the land, he became the equitable assignee of Potter and Levy, and was entitled to all the rights possessed by them. He has an undoubted right to insist on a foreclosure for the purchase money, and this is just what the court decreed.

AFFIRMED.