MAGGIE MATHIAS, ET AL, Appellees, v. L. E. MATHIAS, Appellant.

**Trespass:** RIGHT OF ACTION: TRANSFER BY CONVEYANCE. A conveyance
1 of land does not operate to transfer any right of action the grantors may have had against a third person for trespass upon the land, regardless of what the covenants of warranty in the deed may have been.

**Same:** RIGHT OF ACTION: RELEASE BY CONVEYANCE OF LAND: RATIFI-
2 CATION. To constitute ratification of an unauthorized contract it must appear that the party in whose name it was made had full knowledge thereof and of the facts and circumstances under which it was made; and the burden of showing ratification is upon the party asserting some right based thereon. Ratification of an executory contract for the sale of land, signed by only one of several owners, and relied upon by a third party as preventing a recovery by the other owners for trespass to the land, cannot be established by simply showing that they executed a conveyance or received the purchase price of the land, where it did not appear that they knew of the contract when the conveyance was made.

*Appeal from Van Buren District Court.*—HON. C. W. VER-
MILLION, Judge.

TUESDAY, OCTOBER 20, 1914.

ACTION at law to recover double damages for a trespass upon plaintiff's property in the mining and taking away of coal under lands claimed to be owned by them. The trial court dismissed the petition as to Maggie Mathias, but rendered judgment in favor of the other plaintiffs, and defendant appeals.—*Affirmed.*

*Walker & McBeth* and *W. S. Allen,* for appellant.

*Robt. & H. B. Sloan* and *J. C. Calhoun,* for appellees.

Deemer, J.—Prior to the year 1904, one Lacinda Mathias owned some land in Van Buren county, Iowa, upon which there was a coal mine, and on October 4th of that year she leased the mine to her son, W. W. Mathias, and one S. A. Dell, under a written lease for the term of five years. Subsequently Mathias acquired the interest of Dell under the lease, and he continued to operate the mine for four years, when he sold the same to the "Smith·Coal Co., or Smith Bros." These purchasers continued to operate the mine until January 28, 1909, whereupon he again leased the mine to them for another five-year period.

On December 11, 1909, the Smith Company assigned their lease to the defendant, and he and one Ramsey operated the mine together for about one year, when defendant alone assumed its operation and continued the same down to the time this action was commenced. When operating the mine with Ramsey, and also while conducting it alone, defendant got over the line and mined coal from under land formerly belonging to the plaintiffs. The amount of coal thus mined from the land theretofore belonging to plaintiffs is practically conceded, and the amount of the judgment is not seriously controverted.

There is some controversy as to just when defendant commenced to mine coal under the lands theretofore owned by plaintiffs, but we are disposed to think that it was some time after August 1, 1910. One George L. Mathias, now deceased, at one time owned the land from which the coal was taken, and plaintiffs Maggie Mathias, his widow, and Jay Mathias, G. R. Mathias, Charles Mathias, A. R. Mathias, and Ada Countryman, his children, acquired title thereto as his sole and only heirs at law. On August 1, 1910, Maggie Mathias entered into a contract with one Chester Evans for the sale of the said land, which contract reads as follows:

August 1st, 1910.

Contract of sale by and between Maggie Mathias and all the heirs of G. L. Mathias, to wit: Said Maggie Mathias and heirs have this day sold to Chester Evans the G. L. Mathias homestead 105 acres section (16) township (70) range (10) west for the consideration of six thousand and four hundred and five dollars ($6,405) to be paid as follows, two cash dollars in hand on the signing this contract and the balance March 1st, 1911. Said first party reserves the rock and what stove wood, hay rope and fork and is to leave the buildings and farm in as good order March 1st, 1911, as they are to-day and what loose wire Mathias reserves. Said Evans agrees to the above and is to have possession March 1st, 1911.

Signed this day August 1st, 1910.

Maggie Mathias and Heir.<br>Chester Evans.

And further agreed the second party is take the insurance money in lieu of the buildings the first party is keep the insurance paid and collect the money and turn the same to Mr. Chester Evans in case of loss.

Maggie Mathias.<br>Chester Evans.

It will be noticed that this contract was signed by Maggie Mathias alone, and there is no showing that she had authority to sign it for and on behalf of the children of the deceased. On the 8th day of March, 1911, the widow and all the heirs of George L. Mathias joined in an ordinary warranty deed for the premises to Chester Evans and Mary Evans jointly. Some question having arisen regarding the taking of coal under lands agreed to be sold, defendant undertook to pay and settle for the same with the purchaser, Evans, and on the 28th of February, 1911, the Evanses executed and delivered to the defendant the following receipt and satisfaction:

Received of Lewis E. Mathias, of Van Buren county, state of Iowa, the sum of $25.00 in full payment, compromise and settlement of all claims against him for coal or other mineral mined and taken away by him or his employees on and from the real estate, situated in Lick-Creek township, in Van Buren county Iowa, recently purchased by us from

Maggie Mathias and sons, and known as the Moyer farm, it being also in full payment and compromise of all damages due us by reason of mining and taking away of such coal and mineral. This is executed by way of showing and as evidence of full settlement and payment to us of all our claims, whatsoever, against said party and against all parties connected with him, arising out of or in any way connected with the operation of a coal mine by said Lewis E. Mathias by himself as well as in connection with any one else with him, situate in Lick-Creek township, in said county and state, and known as the 'Mathias Coal Bank,' and especially in so far as the operation or running of said bank affected any coal or mineral or any other thing on the aforesaid Moyer farm. Dated February 29, 1911.

Chester Evans.<br>Mary Evans,<br>Per Chester Evans.

Defendant avers that the deed to the Evanses was executed pursuant to the contract of sale, and pleads the settlement with them, as a complete defense to plaintiffs' claim. Plaintiffs in reply denied that any title passed to Evans under the contract of sale, and further averred that the said contract was made by Maggie Mathias alone and conveyed her interest only, and not any interest of the other plaintiffs, and that in any event the contract was merged in the deed, and the deed conveyed no right of action then held by the grantors against the defendant. They also averred that Evans acquired no title under the contract, and that the settlement made with Evans is fraudulent and a mere subterfuge, made to cheat and wrong the plaintiffs. They also alleged that:

Defendant is estopped from denying that he was the sole owner and operator of said mine, because of his failure to comply with section 2485 of the Code of Iowa for 1897.

It was upon these issues that the case was tried, resulting in a judgment dismissing the petition as to Maggie Mathias and awarding to the other plaintiffs a judgment for the sum of $471.84 and costs. As Maggie Mathias has not appealed,

we have no occasion to consider the correctness of the judgment as to her. Appellant contends that the same result should have been reached as to the other plaintiffs, and he bases this upon the proposition that, by the contract for the sale of the land, the title passed to the purchaser, Evans, and that as the trespass was committed after this transfer the settlement with Evans is a complete and perfect bar to the suit. He depends upon a line of authorities which seem to hold that, under such a contract, title, either legal or equitable, passed to the purchaser, subject only to a lien in favor of the vendor for the unpaid purchase price, and that the vendor holds the legal title simply in trust for the vendee, citing *Cone v. Cone,* 118 Iowa, 461; *Frost v. Clark,* 82 Iowa, 298; *Dillow v. Warfel,* 71 Iowa, 106; *Davidson v. Hawkeye Co.,* 71 Iowa, 532; *Sacket v. Osborn,* 26 Iowa, 146; *Van Driel v. Rosierz,* 26 Iowa, 575; and other like cases.

Appellees deny the correctness of this rule, save where the purchaser enters into possession of the property sold; deny its applicability to the facts of this case; say that they did not join in the execution of the contract, and that they did not authorize any one to make it for them; and, further claim that the deed which they made did not transfer any right of action which they held against the defendant for trespass to the grantees therein, Chester and Mary Evans. They also rely upon section 2485 of the Code, which reads as follows:

The owner or person in charge of any mine shall make or cause to be made an accurate map or plan of the same, on a scale of not less than one hundred feet to the inch, showing all the area mined or excavated, and on or before the first day of September of each year cause to be made a statement and plan of the progress of the working of the mine up to date, which progress shall be clearly indicated upon the map hereinbefore required; a failure to comply with this provision for sixty days shall authorize the inspector of the district to cause the same to be done at the expense of the owner, which may be recovered in an action against him by the

person doing the work, and the map so made shall include and cover the entire mine. All maps shall be kept exposed in the office of the mine, and said maps shall be subject to pub· lic inspection. The owner of any mine which is worked out or abandoned, or his agent, shall deliver a correct map thereof to the inspector to be filed in his office. Upon affidavit of any adjoining land owner in the vicinity of said mine, or his agent, that it is necessary for the protection of his property to know how near his land the excavations in the mine extend, the inspector shall make an examination, employing a surveyor therefor if necessary, to determine the length and direction of entries leading toward the land of the applicant and the extent of excavation of same on all of his land, if any, and make report of the same to him. The necessary expenses, including compensation of five dollars per day each to the inspector and surveyor, shall be paid by the applicant, except when it shall be shown that said applicant's property has been undermined, in which case the expense shall be paid by the mine owner or operator. Any owner or person operating a mine, who, without permission, takes coal from adjoining lands, shall be liable in double damages therefor and for all expenses caused thereby.

This section has been amended since the trespass was committed. See 34 General Assembly chapter 106, section 4.

For the purpose of delimiting some of the legal propositions, and getting at the controlling rules applicable to the case, we may premise this discussion by saying that the deed

1. TRESPASS: right of action: transfer by conveyance.

to Chester and Mary Evans did not convey any cause of action which the grantors may have held against the defendant for trespass upon the land, no matter what the covenants of warranty, either in the contract or the deed. *Flickinger v. Omaha B. & F. R. Co.*, 98 Iowa, 358; *Pratt v. Railroad Co.*, 72 Iowa, 249; *Davenport v. Whisler et al.*, 46 Iowa, 290. In the latter case it is said:

The plaintiff, having accepted the deed of Whisler, in the absence of imposition or fraud, must look to the covenants of the deed for relief. 'When the deed of conveyance

has been executed, the contract is then executed, any incon-
sistencies between its original terms and those of the deed
are, in general, to be explained and governed solely by the
latter, into which the former is merged, and by which the
parties are thereafter to be bound, and the purchaser's only
relief, either at law or in equity, from defects or incum-
brances, depends, in the absence of fraud, solely upon the
covenants for title which he has received.' Rawle on Cove-
nants for Title, 605. See, also, *Houghtaling v. Lewis*, 10
Johns. (N. Y.) 297; *Bank v. Galbraith*, 10 Pa. 490 (51 Am.
Dec. 498); *Shontz v. Brown*, 27 Pa. 131.

As the appellees did not join in the contract of sale, and
there is no testimony tending to show that they authorized it,
they are not bound thereby, and no title passed thereunder,
unless it be true, as appellant contends, that
by joining in the deed they ratified the con-
tract and became bound thereby from the time
of its execution. There is some doubt as to

**2. SAME: right of action: release by conveyance of land: rati-fication.**

whether ratification by them is pleaded by defendant; but,
passing this point, the burden, under the circumstances, was
upon the defendant to plead ratification of the original con-
tract.

In order to constitute a ratification of an unauthorized
contract, it must be shown that the party in whose name it
was made had full knowledge thereof, and of the facts and
circumstances connected with its execution. *First Bank v.
Allen*, 100 Ala. 476 (14 South. 335, 27 L. R. A. 426, 46 Am.
St. Rep. 80); *Bohart v. Oberne*, 36 Kan. 284 (13 Pac. 388);
*Kelley v. Railroad Co.*, 141 Mass. 496 (6 N. E. 745).

The mere acceptance of the purchase price of land will
not, in the absence of a showing of knowledge of the circum-
stances connected with the sale, amount to a ratification of an
unauthorized executory contract for the sale thereof. *White
v. Sanders*, 32 Me. 188; *Thacher v. Pray*, 113 Mass. 291 (18
Am. Rep. 480).

Now there is absolutely no proof that the appellees herein
knew of the contract made by Maggie Mathias alone, at the

time they signed and executed the deed to the Evanses, and it is not to be presumed from the fact that they signed and executed the deed that they knew of the contract made by their mother, Maggie Mathias. At any rate, the question of ratification was of fact, and, the finding of the trial court having the force and effect of a verdict by a jury, it should not be disturbed on the record now before us.

As there was no ratification of the unauthorized contract, and the deed did not transfer plaintiffs' right to damages. already accrued, appellees were entitled to the judgment rendered in their favor. Some reliance is placed upon the reservations and exceptions contained in the contract; as plaintiffs did not join therein, and have not ratified the same, and as the deed did not amount to an assignment of their cause of action to the Evanses, there is nothing in this contention.

In view of this holding, it is unnecessary to decide the main proposition relied upon by appellant, to the effect that the contract transferred the title, and because of the covenants and reservations therein plaintiffs transferred their right of action to the purchasers. Upon that proposition there is much doubt because of the peculiar wording of the contract. With reference to the general rule relied upon by appellant, the cases cited by him to the effect that title passes under an executory contract of sale are generally based upon the fact that possession was given the purchaser under the contract, and the distinction between such cases and those where possession is retained by the vendor is pointed out in *Kempton v. State Ins. Co.*, 62 Iowa, 83. See, also, *Hill v. Cumberland Co.*, 59 Pa. 474.

In Warvelle on Vendors (1st Ed.), page 897, it is said:

It is a rule of general and universal observance that the legal title to land draws to it the legal possession of the same, and this rule has often been applied in the solution of questions growing out of the relation of vendor and vendee. A contract of sale is prospective in its operation, and does

not without special stipulation confer any rights of immediate occupancy upon the vendee. The legal title which the vendor retains until final execution is attended with all its legal incidents, including the right to hold, possess, and enjoy the land; and the vendee cannot, at least until full payment has been made of the purchase money, claim any possessory rights in the premises he has contracted to purchase. The mere fact that a person has made a contract for the purchase of land does not entitle him to enter upon and hold it, and a purchaser's possession so obtained, in the absence of some agreement permitting him to enter, would be unauthorized and unlawful.

At page 188 the same author says:

The oft-asserted proposition that, from the time of the contract for the sale of land, the vendor as to the land becomes a trustee for the purchaser, and the latter as to the purchase money becomes a trustee for the vendor, who has a lien upon the land therefor, while fully expressing the rule of equity in its general application, is nevertheless subject to some qualification under special circumstances, and is not of such potency as to establish an equitable title in the purchaser in opposition to expressed intent or clear legal implication. The essential feature of an equitable title is that it is one which appeals to equity for confirmation and enforcement. Hence a mere contract or covenant to convey at a future time, on the purchaser performing certain acts, does not create an equitable title. It is only when the purchaser performs or tenders performance of all the acts necessary to entitle him to a deed that he has an equitable title and may compel a conveyance. Prior thereto he has, at best, only a contract for the land when he shall have performed his part of the agreement.

See, also, *Chappell v. McKnight*, 108 Ill. 570.

Whether or not this rule should apply to such a contract as the one now before us, we need not decide; for Maggie Mathias, the vendor in that contract, has not appealed. But see the cases already cited for appellant, and *Sheehy v. Scott*, 128 Iowa, 551, and *Mohr v. Joslin*, 162 Iowa, 34.

For the reasons pointed out, we think the judgment of the trial court from which the appeal was taken is correct, and it is—*Affirmed.*

LADD, C. J., and GAYNOR and WITHROW, JJ., concurring.