JOHN D. WOLFE, et al., Appellees. v. IOWA RAILWAY & LIGHT COMPANY, Appellant.

**EMINENT DOMAIN:** Compensation—Person Entitled—"Owner"—
1 **Vendor and Vendee.** An "owner" of real estate within the meaning of the Eminent Domain Act (Sec. 1995, et seq., Code, 1897) may include one who has a *fixed and vested interest in the real estate as such*, even though he does not hold the legal title when condemnation proceedings are instituted.

PRINCIPLE APPLIED: A vendor, holding the legal title and exclusive ownership of land, contracted in September, 1913, to sell the same, title deed to pass to vendee on March 1, 1914. In case of loss by fire, or in case a contemplated railway right of way was condemned across the land, the damages were to be applied on the purchase price. In October, 1913, condemnation proceedings were instituted for said right of way, the vendor and vendee both being made parties. The *vendor* did not appeal from the award. The *vendee* and the railway company did appeal. On March 1, 1914, vendee received his deed. Later, the appeals were consolidated and tried. *Held*, the vendee had such interest in the land, under his contract and subsequently acquired deed, as to render him a proper party to the proceeding, with consequent right to maintain his appeal.

**VENDOR AND PURCHASER:** Estate of Vendee—"Equitable
2 Ownership" Rule Recognized.** Rule recognized that a valid, binding, enforceable contract, under which vendor agrees to sell and vendee agrees to buy real estate, with performance postponed to a future date, constitutes the vendee the equitable owner of the land, and the vendor a trustee holding the legal title in trust as security for the performance of the contract, until breach and forfeiture of rights occur.

*Appeal from Linn District Court.*—F. O. ELLISON, Judge.

FRIDAY, DECEMBER 17, 1915.

CONDEMNATION proceeding for railroad right of way purposes. Both parties appealed from the award of the sheriff's jury. In the district court, the appeals were consolidated and tried as one case. From the award and judgment in the district court, the defendant has appealed.—*Affirmed.*

*John A. Reed, E. H. Crocker, Charles W. Kepler & Son,* and *E. A. Johnson,* for appellant.

*Redmond & Stewart* and *Charles Penningroth,* for appellees.

EVANS, J.—I. The three plaintiffs are named in the proceedings as purported owners and parties in interest in the real estate involved. The condemnation proceedings were instituted by the defendant railway company, and the award of the sheriff's jury was made on October 31, 1913. At that time, plaintiff Maybauer held the legal title to the land involved herein, being a farm of 80 acres, subject to a contract of sale entered into by him with his coplaintiffs, John D. Wolfe and Thomas L. Wolfe, whereby Maybauer agreed to sell and the Wolfes to buy said farm for an agreed consideration, to be paid on March 1st following. This contract was fully performed according to its terms by both parties thereto on March 1st following, which date was prior to the date of the trial hereof in the district court. The plaintiffs make no controversy between themselves.. The defendant, however, contends that the Wolfes had no such interest or ownership of the land as entitled them to appear as plaintiffs. The defendant, therefore, moved, at the close of the evidence, that their appeal from the award of the sheriff's jury be dismissed, and that all the evidence in the record offered by them on the subject of damages should be stricken therefrom on such ground. The question thus raised is the one question now presented for our consideration on this appeal. The basic proposition of the defendant's argument herein is that the contract of sale from Maybauer to the Wolfes was wholly executory, and that the title to the land was unaffected thereby; that, at the time of the award by the sheriff's jury, Maybauer was the only party in interest as the absolute and unqualified owner in fee simple; that the subsequent war-

*Margin note:* 1. EMINENT DOMAIN: compensation: person entitled: "owner": vendor and vendee.

ranty deed executed by Maybauer on March 1st could not affect the damages; that, therefore, Maybauer alone could be heard to claim or prove damages; and that Maybauer himself did not appeal from the award of the sheriff's jury or appear in person at the trial.

The request of the motion in the district court was that a verdict be directed against the Wolfes on the grounds here indicated. The defendant did not, in the district court, ask a dismissal of its own appeal. The plaintiffs were all in court by virtue of defendant's appeal and by virtue of the initial proceedings, which the defendant instituted against them. On such appeal, the question of damages was triable *de novo*. Except in one respect, hereinafter indicated, the defendant had no interest in the question as to whom the damages accrued as between the plaintiffs. The contract of sale entered into by Maybauer and the Wolfes was as follows:

"This agreement, made this nineteenth day of September, A. D. 1913, between Lewis Maybauer of the county of Linn and state of Iowa, party of the first part, and John Wolfe and Tom Wolfe of the county of Linn and state of Iowa, party of the second part, as follows:

"The party of the first part hereby agrees to sell to the party of the second part, on the performance of the agreements of the party of the second part, as hereinafter mentioned, all his right, title and interest in and to the real estate situated in the county of Linn and state of Iowa, to wit:

"On March 1, 1914, the 80-acre farm owned by first party, directly between Mt. Vernon, Iowa, and Lisbon, Iowa, directly opposite West Wood horse farm.

"In case of loss by fire or otherwise, first party collects insurance and credits same to second party on purchase price of farm for the sum of twenty-three thousand two hundred dollars, payable äs hereinafter mentioned. And the said party of the second part, in consideration of the premises, hereby agrees to and with the party of the first part, to purchase all

his right, title and interest in and to the real estate above described, for the sum of twenty-three thousand two hundred dollars, and to pay said sum therefor to the party of the first part, his heirs or assigns, as follows: Five thousand and two hundred dollars on March 1, 1914, as shown by note dated Sept. 19, 1913, and due March 1, 1914, and eighteen thousand dollars, March 1, 1915, as shown by one note to be given March 1, 1914, for eighteen thousand dollars, due March 1, 1915, given by second party to first party, at which time (March 1, 1914), deed and abstract to be given second parties. The eighteen thousand dollar note secured by first mortgage on land sold herein, with interest from this date at the rate of 5 per cent. per annum on all such sums as shall remain unpaid, payable annually until all is paid.

"It is expressly agreed that the party of the second part shall keep all buildings on said premises constantly insured for two thirds their value in good and satisfactory insurance companies for the benefit of the party of the first part * * *.

"But if said sums of money, interest and taxes are paid as aforesaid, promptly at the time aforesaid, the party of the first part will, on receiving said money and interest, execute and deliver at his own cost and expense a warranty deed of said premises as above agreed, accompanied by an abstract showing good and sufficient title to said property in the vendor, free and clear of all liens and incumbrance.

"If any of the land is condemned by Interurban R. R., all such money must be applied on payment of above note."

It is manifest from the foregoing that the legal title of the farm in question rested in Maybauer until March 1, 1914. It is also manifest that the contract in question was obligatory upon, and enforceable against, both parties thereto. Neither party could escape the provisions of this contract except by the subsequent consent of the other. Such subsequent consent would amount only to a subsequent contract. Under this contract, the full beneficial interest of Maybauer in the land was

the agreed purchase price to be paid. Under the same contract, the Wolfes became subject to every future unfavorable contingency, and entitled to the benefit of every favorable one. Future depreciation of value would fall upon them. Future appreciation would inure to them. Future appreciation or depreciation could affect Maybauer only as affecting his security for the purchase price. The contract was entered into before the appropriation of the right of way. It was known to the parties that a location of a right of way was in prospect as a possibility, but no rights had been asserted by or accrued to the railway company. In the absence of a contrary provision in the contract, it would seem too clear for dispute that if, after the execution of such binding contract, the premises should be depreciated by the appropriation of a right of way, the damages accruing by reason of such appropriation should accrue to the purchasers, to the extent at least of having the same applied in reduction of the purchase price. This equitable consideration was recognized by the parties to the contract at the time of its execution, by the following clause:

"If any of the land is condemned and taken by Interurban Railway, all such money must be applied to the payment of the above note."

Unfortunately this clause is somewhat ambiguous. It may be construed to mean that Maybauer, as holding the legal title, should collect the damages and apply the same upon the purchasers' note for the purchase price, or it may be construed to mean that the Wolfes should collect the damages and apply the same upon the purchase money note. The ambiguity is not material, because the net result is the same upon either construction. The effect of it is to protect the security of Maybauer, and at the same time to recognize the beneficial ownership of the Wolfes, and to give them the benefit of the damages in the reduction of the note. As a security for the purchase money, therefore, the damages

belonged to Maybauer; as an asset, they belonged to the Wolfes, subject to Maybauer's equitable lien. The general

2. VENDOR AND PURCHASER: estate of vendee: "equitable ownership" rule recognized.

rule, which has been recognized for many years in this state, is that a valid and binding contract, entered into between parties who are able to perform, whereby one agrees to sell and the other to buy real estate for an agreed consideration to be paid at a future date, and whereby the formal conveyance is to be postponed until such payment be made, has the effect to make the purchaser the equitable owner of the land and to make the seller a trustee holding the legal title in trust and as security for the performance of the contract; and that such relation will continue at least until there shall be a breach of performance and a forfeiture of rights. The defendant concedes this general rule, but contends for certain distinctions which differentiate the present case, whereby such rule does not apply. The following cases are illustrative of the line of cases relied on by the defendant for such differentiation: *Mathias v. Mathias,* 167 Iowa 81; *Sheehy v. Scott,* 128 Iowa 551; *Kempton v. State Ins. Co.,* 62 Iowa 83. The *Kempton* case involved the construction of a forfeiture provision in an insurance policy whereby the insurance became forfeited by the sale of the premises. Such forfeiture clause was construed most favorably to the policy holder, and it was held that only a completed sale, including the transfer of the legal title, could operate as such a forfeiture. In *Sheehy v. Scott,* the contract involved was a contract of option only. There was no undertaking in such contract on the part of the alleged purchaser whereby he bound himself to purchase. He had, therefore, only an option to purchase, which could become effective only by its subsequent exercise. In the *Mathias* case, the holding was that a warranty deed carried with it to the grantee no right to recover damages for trespass committed upon the granted premises prior to the execution of the deed, such right of damages accruing only to the then owner of the premises. The deed involved in that

case was executed by several grantors, who were owners in common of the land. There had been an antecedent contract of sale entered into between the grantee of the land and one of the owners in common. The other grantors, however, were not parties to such antecedent contract. As to them, therefore, they were allowed to recover in their own right the damages ensuing from a prior trespass. The one grantor, however, who had entered into antecedent contract was denied such recovery.

In the case before us, it is not very material whether we call the Wolfes the equitable owners of the land or whether we characterize their interest by some other term. They did have a fixed and vested interest in the real estate as such. Their interest was clearly affected by the appropriation of the right of way across such farm. The mutual rights of the plaintiff Maybauer and the Wolfes were entirely consistent; one was not adverse to the other. Both purchaser and seller understood their relative rights alike. In order to be "owners", within the meaning of the condemnation statute, it is not necessary that the ownership be exclusive nor that it be vested with a legal title as distinguished from an equitable interest. We have held that, under appropriate circumstances, a mortgagee may claim the benefit of damages to be awarded. *Sawyer v. Landers & Son*, 56 Iowa 422; and *Schafer v. Schafer*, 75 Iowa 349. The question here presented was discussed in *Pinkerton v. Boston & A. R. Co.*, 109 Mass. 527, 537, as follows:

"With regard to any previous taking of the land, the respondents deny the petitioner's right to recover damages, on the ground that the legal title had not vested in him at the time. But before the filing of the location of 1866, he had made a contract for the purchase of the land, and had thereby become equitably entitled to a conveyance upon the performance of the conditions of the purchase. The price which he had agreed to pay was made upon the assumption that he was to become the owner of the entire lot, unincumbered by

See top page 285.

(Paste at bottom page 283. See Volume 178 for republication.)

as in the case of other trustees, but certain duties, one of which is to use reasonable care to preserve the property in a reasonable state of preservation, and, so far as may be, as it was when the contract was made.''

In *Stevenson v. Loehr*, 57 Ill. 509, 511, it is said:

''In such cases, then, if the railway company, condemning a portion of the land, pays damages, they would belong, in equity, to the purchaser. It is true, if the security of the vendor would be impaired by the receipt of the damages by the purchaser, he might insist they should not be paid to him until his security had been increased to that extent, and the purchaser would have a corresponding right to security, if about to be placed in jeopardy by their payment to the vendor. But the damages belong, in fact, to the purchaser, and if the vendor receives them he must hold them as trustee for the purchaser, to be accounted for when the purchase money is paid.''

II. Upon the record before us herein, the defendant has no apparent interest to subserve by raising the question as to the relative rights of these plaintiffs as to the damages to be awarded to the owner. The situation that stimulated this objection in the first instance was that the Wolfes owned land contiguous to the Maybauer land and bought the Maybauer land with a view of farming the same in conjunction with their other lands. An attempt was made by the Wolfes to predicate their damages upon the basis of their holding both farms as one. That is to say, they undertook to claim that the land previously owned by them had been diminished in value by the appropriation of the right of way out of the newly acquired land. It may be assumed that this would have been an element of damages not available to Maybauer. The trial court, in its instructions to the jury, did not permit the damages to be assessed upon such a basis, but confined the jury strictly to the depreciation of the newly acquired farm by reason of the appropriation. On this basis, the amount of the award would be the same whether it should accrue to May-

See top page 286.

(Paste at bottom page 284. See Volume 178 for republication.)

the action of the respondents in appropriating a portion of
it to their own use.   Under the decree of this court, he has
been compelled to fulfill his contract, and to pay the price
of the entire lot.   The effect of this decree is that he gets
from his grantors less than he contracted for, and that all the
damage resulting from the construction of the respondents'
railroad falls upon him, and not upon the parties from whom
he derived his title.   So far as it is a question between him
and his grantors, there can be no doubt that the compensa-
tion for the taking equitably belongs to him, and not to them.
If it should be paid to them, the result would be that they
would be paid a second time  for what they have already sold
and been paid for.   They have already been paid for the
entire lot, and if in addition to the price paid them they were
to proceed and recover damages for land  taken after they had
ceased to have the equitable title, on the ground that they had
not parted with the legal title, they would be liable for any
amount so recovered to the petitioner, as his trustees.   It is
a mere question whether he can claim the damages in his own
name, or is bound to sue for them in the name of the grantors,
in whom the legal title stood.   We do not think that, in pro-
ceedings of this nature, there is any inflexible rule of law
that requires the court to shut its eyes to the real interests
of the parties, or to refuse to take into consideration their
substantial rights and equities in relation to each other.   All
that the respondents are entitled to is that they shall not, after
paying the damages to one party, continue liable to pay them
to another.''

Also in *Clarke v. Ramuz*, Law Reports, 1891, 2 Queen's
Bench, 456, Lord Coleridge discussed the same as follows:

''It appears to be well established in equity that, in the
case of a contract for the sale and purchase of land, although
the legal property does not pass until the execution of the
conveyance, during the interval prior to completion the
vendor in possession is a trustee for the purchaser, and as
such has duties to perform towards him, not exactly the same

See top page 284.
(Paste at bottom page 285.   See Volume 178 for republication.)

bauer or to the Wolfes. The defendant, therefore, had no interest in the question of whether, as between themselves, Maybauer or the Wolfes should take the damages. Each had his appropriate interest therein. All were parties to the case, and the defendant was thereby protected by the adjudication against double liability.

Upon the whole record, therefore, we hold that the Wolfes had such an interest in the real estate, both under their contract and under the subsequent warranty deed, as to make them appropriate parties to the proceeding; and, being parties thereto, they were entitled to be heard upon the one issue in the case, viz., What was the depreciation in the value of the farm in question by reason of the appropriation of the right of way? The order of the district court is, therefore,—*Affirmed.*

DEEMER, C. J., WEAVER and PRESTON, JJ., concur.