A. M. CHRISTENSON, Appellant, v. BOARD OF SUPERVISORS OF HAMILTON COUNTY et al., Appellees.

**DRAINS:** Assessments—Objections—Degree of Certainty Required.
1 Objections before the board of supervisors to assessments of benefits for drainage improvements are required to be specific only to the extent that the board can fairly and reasonably understand therefrom, when construed and read in the light and by the aid of the *entire drainage record* before the board pertaining thereto, (a) what assessments are referred to, (b) the particular lands affected thereby, and (c) the nature of the objection.

PRINCIPLE APPLIED: A landowner had four 40- and two 20-acre tracts. Two of the forties constituted one tract, the S ½ NW ¼, Sec. 14. The other two forties and the two twenties constituted another tract, the N 120 acres of NW ¼, Sec. 15.

In the drainage proceedings, the six tracts were described *separately* by governmental descriptions. To a proposed assessment, the owner filed objections, describing the land just as the officers described it in making up the drainage record. This proposed assessment was set aside, and another one duly had. To this last assessment, the owner again filed objections, without using *any* governmental descriptions. He assumed, manifestly, that the board already understood the matter. He referred to his ''eighty'' and stated wherein and how it was assessed out of proportion to other abutting ''forties'' owned by named owners, but without other descriptions. The rest of his land, he referred to as ''the 121 acres in the northwest corner of Sec. 15,'' with a statement of the great depth of blue clay covering the tile and its consequent failure to drain said tract without lateral tiling by him. *Held,* the latter objections were sufficiently specific when construed in the light of the *former specific descriptions* employed by the objector.

**DRAINS:** Assessments—Appeal—Who May Maintain—Vendor of Land. One who has sold land and agreed with his vendee to pay a proposed drainage assessment thereon may maintain an appeal to the district court from the adverse order of the board of supervisors overruling his objections to the proposed assessment.

*Appeal from Hamilton District Court.*—R. M. WRIGHT, Judge.

TUESDAY, MARCH 14, 1916.

APPEAL from an assessment of benefits against the plaintiff in a drainage proceeding. In the district court, the plaintiff filed a petition, as provided by statute. The defendants demurred to the petition, and their demurrer was sustained. Six days later, the court entered the default of plaintiff for want of pleading, and dismissed his petition and entered judgment for costs. Thereafter, the plaintiff moved to set aside the default and judgment. His motion being denied, he has appealed from all the adverse orders of the court.—*Reversed* and *Remanded.*

*Wesley Martin* and *R. G. Remley,* for appellant.

*D. C. Chase* and *J. M. Blake,* for appellees.

EVANS, C. J.—I. It appears from the record before us that, at the time of the institution of the drainage proceedings

involved herein, the plaintiff was the owner of two certain
bodies of land included in the drainage dis-
1. DRAINS: as-      trict.  These bodies of land can be briefly
sessments: ob-
jections: degree   described as the S ½ of the NW ¼ of Section
of certainty re-
quired.            14 in a certain township, and the north 120
acres of the NW ¼ of Section 15 in the same township.  These
tracts would necessarily appear in a plat or map of the dis-
trict as indicated herein.

The land of the plaintiff was described in the drainage
proceedings and in plaintiff's petition in six separate descrip-
tions, four of such descriptions comprising a subdivision of
40 acres each, and two of them, a subdivision of 20 acres each.
Plaintiff's petition set forth a copy of his objections before
the board of supervisors.  One of the principal grounds of
the demurrer went to the alleged insufficiency of the descrip-
tion contained in such objections before the board.  Such objec-
tions contained the following:

"1.  That the assessment as levied by the said appraisers
for the A. M. Christenson eighty and the Katrina Knutson
forty to the south, adjoining, and the Osmund Tungesvik
eighty to the north, adjoining, are unjust and unfair and not
in reasonable proportion, in that A. M. Christenson is assessed
$802.80 for his west forty, which has a small swamp back of
the house, with benefits of about ten acres' increased cultiva-
tion, and Katrina Knutson is assessed only $219.60 for an
outlet and benefits for their west forty on a basis of twenty
acres' benefits, whereas they receive about thirty acres' bene-
fits.  And also that Knutson's northwest forty has some seven
dips or sloughs which are uncultivatable, and which will be
benefited so as to make them able to be cultivated.  And
Osmund Tungesvik is assessed only $350.10 on his west forty,
whereas he is benefited by having the swamp which is situated
in front of his house and between it and the road, drained;
that because of this situation and the location of the swamp
as compared to his house, that he received greater benefits."

The sufficiency of this objection was assailed by the

demurrer as being too indefinite to direct the attention of the board of supervisors to any particular land or to any particular grievance.

This paragraph of the objection should be read and construed in the light of the entire record then before the board of supervisors. These particular objections were filed by the plaintiff before the board of supervisors on December 15, 1913, and the same were acted upon by the board on January 2, 1914. The record of proceedings before the board, however, disclosed at that time that the plaintiff had previously appeared and filed objections to certain proposed assessments in the same district, which were heard on April 21, 1913. These objections included specific descriptions of plaintiff's lands separated into six subdivisions, to correspond with the descriptions contained in the proposed assessments. Upon such objections and others, the report of the commissioners then under consideration was rejected and set aside. New commissioners were appointed and a new date fixed for a report and a hearing thereon. The plaintiff again appeared and renewed his objections, but without repeating the specific descriptions of his property which were contained in his first objections.

It will be noted that there is nothing in the descriptions assailed by the demurrer which is contradictory to or inconsistent with a specific description of the land in 40-acre tracts or 20-acre tracts. Reading the description and complaint of plaintiff in the light of the record of the proceedings of such drainage district then before the board of supervisors, was it reasonably sufficient to direct the attention of the board to the particular assessments and to the particular lands of plaintiff affected thereby?

Since this case was heard in the district court, we have had occasion to consider the question here involved, that is to say, the degree of particularity which is essential to the validity of the objections before the board of supervisors in such a case. *Flood v. Board of Supervisors,* 173 Iowa 224. We

held, in effect, in that case that particularity and specification of complaints should not be emphasized if, from the objections filed, the board of supervisors could fairly understand what was claimed by the objectors. Such also was our holding in *Lightner v. Greene County*, 156 Iowa 398, and *Chicago, M. & St. P. R. Co. v. Monona County*, 144 Iowa 171. The reasons for such holding are discussed in the cited cases, and we need not repeat them. We feel constrained to hold, therefore, that the objections made were sufficient in form at this point to enable the board of supervisors, in the light of their own record in such proceedings, to understand what assessments were complained of and what particular subdivisions were involved. We think, therefore, that it was permissible for the complainant to show, if he could, under such objections, that the assessment on the west forty of his "eighty" was in excess of benefits, or that it was inequitable as compared with other assessments in the district. The "eighty" should be construed to comprise the two adjoining 40-acre tracts contained in Section 14.

II. As to the land in Section 15, the plaintiff filed before the board of supervisors the following objections, at the second hearing:

"(5) That the assessment against the 121 acres in the northwest corner of Section 15 in Scott Township is unjust and unfair for the following reasons: That the ditch as it runs through the lands of this objector is from ten to twelve feet deep, and that the lower three to five feet of said ditch is blue clay, so that about three feet of this blue clay covers the tile in said ditch. And because of this fact the water will not soak through and into the tile readily, but that lateral tile will have to be put in before this petitioner can get the benefits of the ditch. Wherefore this objector asks that the assessments against his land herein mentioned be lowered to a just and reasonable basis."

What we have already said in the foregoing division has considerable application here, although this objection is even

more indefinite than the first. As before said, in the light of the record before the board, we think this was sufficient to point out plaintiff's land in Section 15, which had been fully described by him in previous objections. We think, also, that the objection here specified was sufficiently specific to authorize the plaintiff to show, if he could, that the assessment was in excess of benefits received, and that it was, in that respect, "unjust and unfair."

III. It appears from the record of proceedings before the board of supervisors that, by the second report of the commissioners, the lands in Section 15 formerly assessed to the plaintiff were now assessed to one Braland. It also appears from plaintiff's petition that such land was formerly owned by him, and that he was under contract with Braland to pay whatever assessments should be made against it. There is no direct allegation that he had sold the land to Braland, but such is the inference from the allegations made. One question raised by the demurrer was whether Christenson had any such interest in such assessments as to entitle him to appeal from the adverse order of the board of supervisors. Since the hearing of this case in the district court, we have passed on an analogous question in a railway condemnation proceeding, and have held that either the purchaser or seller of real estate, becoming such pending such proceeding, may be a party aggrieved and, as such, entitled to appeal to the district court. *Wolfe v. Iowa Railway & Light Co.*, 173 Iowa 277. Following the holding in that case, we think it was competent for Christenson to show that he had sold the lands to Braland pending the proceedings, and that he had bound himself to pay the assessments, and that he thereby became a party in interest and was entitled to challenge the assessments and to appeal from the action of the board if aggrieved thereby. Some other questions are involved in the appeal, but in view of these conclusions, we need not consider them. In view of these conclusions, the order of the district court must be reversed and

2. DRAINS: assessments: appeal: who may maintain: vendor of land.

à hearing upon the objections ordered.—*Reversed* and *Remanded.*

DEEMER, WEAVER and PRESTON, JJ., concur.