| 101 | 493 |
| 106 | 592 |
| 101 | 493 |
| 107 | 103 |
| 101 | 493 |
| 111 | 79 |
| 101 | 493 |
| 121 | 188 |
| 121 | 189 |
| 121 | 190 |
| 101 | 493 |
| 127 | 635 |

## The Eagle Manufacturing Company v. The City of Davenport, Appellant.

## Frances W. French v. The City of Davenport, Appellant.

**Paving Lien:** "COMMENCEMENT OF WORK" DEFINED. The "commencement of the work" from which Acts Twenty-third General Assembly, chapter 14, provides that the lien of paving assessments shall attach, is not a resolution ordering paving or the letting of the contract, but the performance of labor, or the furnishing of material under it; the word "work" being used in that sense in the preceding sections of the act.

**SALE TO AVOID.** A conveyance of a strip two feet wide along one side of a city block, made after the letting of a contract for the paving of the street on which such strip abutted, and for the sole purpose of avoiding the assessment on the balance of the block, to a grantee who knew the facts and was paid to accept the conveyance, is void, for the purpose of assessment.

**SAME.** A sale of land in good faith for value is not rendered void by the fact that one of the reasons therefor was so to divide the grantor's land as to reduce the paving assessment thereon.

**RULE APPLIED.** A two foot strip abutting on the street along one side of a city block was fraudulently conveyed in order to relieve the block of a paving assessment. A portion of the block, including such strip, was subsequently sold to a corporation, before the lien of the assessment attached. An officer of the corporation, who was a son of the owner of the block, made the sale for her, and had negotiated the previous conveyance. The president of the corporation who made the purchase for it, was also a son of the owner, and had frequently consulted with his brother as to their mother's business. The president testified that he knew of the previous conveyance, and its purpose. *Held*, that the corporation took with such notice of the fraud as would render the land purchased by it, subject to the assessment.

*Appeal from Scott District Court.*—Hon. P. B. Wolfe, Judge.

Friday, April 9, 1897.

ACTION in equity to enjoin the collection of a special tax levied on account of the paving of a street. There was a hearing on the merits, and a decree in favor of the plaintiff in each case. The defendant appeals from each decree. Decree in favor of Eagle Manufacturing Company *reversed*. Decree in favor of Frances W. French *affirmed*.

*E. M. Sharon* for appellant.

*Bills & Hass* for appellees.

ROBINSON J.—In the year 1886, George H. French became the owner of block numbered 123 in Le Claire's Ninth Addition to the city of Davenport. He died testate in the year 1888, and Frances W. French became the executrix of his will. That gave to her a life estate in the property described, and by subsequent conveyances she became its owner in fee simple. On the seventh day of January of the year 1891, the paving committee of the defendant presented to its city council a report which recommended that designated portions of certain streets which were specified be paved during that year. The report was adopted, and resolutions which provided for paving according to the recommendations of the committee were also adopted on the same day. On the twenty-sixth day of the same month, after due notice, contracts for the paving contemplated by the resolutions were awarded. On the second day of May, 1891, a resolution was adopted which provided for the issuing of paving bonds on each of the contracts, and bonds to the amount of seventy-one thousand five hundred dollars were issued in accordance with that resolution. A part of the paving provided for by the resolutions and contracts to which we have referred was of that portion of Front street which is adjacent to the block

specified.   That was the general outline of a truncated triangle.   The west side is two hundred sixteen and six-tenths feet in length; the north side, bounded by Fourth street, is three hundred five and five-tenths feet in length, and the southeast side is three hundred sixty-five and four-tenths feet in length.   In addition, there is a side at the east end, fourteen and one-tenth feet in length.   The block was divided into two parts by a railway side-track, which entered the block on the north boundary line fifty-three feet west of the east end, and thence extending in a southwesterly direction on a line slightly curved, crossing the west boundary line, sixty-two and five-tenths feet north of the southwest corner.   On the seventh day of April, 1891, Mrs. French conveyed to E. C. Westwood a part of the block next to Front street, two feet in width, and extending the entire length of the block on that street. On the twenty-second day of the same month she conveyed to the Eagle Manufacturing Company all of the remainder of the block, which was between the part conveyed to Westwood and a line parallel with, and six feet south of, the railway track.   The outline of the block, the adjacent streets, the location of the side track, and the parts conveyed, are shown by the following plat:

The paving was completed in accordance with the contracts in the latter part of the year 1891. On the fourth day of November of that year, the city engineer presented to the city council a report and plat which showed the amount of paving tax to be assessed on the lots and land abutting on the streets where·paving had been done. Notice to all persons having objections to the plat was published, and in due time the Eagle Manufacturing Company and Mrs. French filed objections to the assessment of the paving tax on the portions of the block in question which they then owned. The substance of the objection was that the objectors did not own, and had not since the paving was ordered, or since work thereon had been commenced, owned any part of the block which fronted or abutted on the part of Front street which had been paved. The objections were overruled, and the tax

for paving that part of the street upon which the block abutted was assessed upon the entire block at the rate of three and fifty-three thousand seven hundred fifty-six hundred thousandths dollars for each front foot.  No attention was paid to the depth of the block. These actions were brought to enjoin the enforcement of the tax against the portions of the block now owned by the plaintiffs.  The district court rendered a decree in each case granting the relief asked.

I.  It will be observed that no part of the block abuts on Front street, excepting the strip which was conveyed to Westwood; and we are required to determine whether the conveyance to him, and the subsequent one to the Eagle Manufacturing Company, were effective to cut off the right which the defendant would have had, if they had not been made, to assess the tax against that portion of the entire block within one hundred and fifty feet of Front street. The paving was done under an ordinance of the defendant, not set out, but which was similar to chapter 14 of the Acts of the Twenty-third General Assembly; hence the provisions of that act will be treated as applicable and controlling.  The act provides for the paving and curbing of streets, and for the assessment of the cost thereof "upon the property fronting or abutting on said improvement."  Section 12, contains the following: "Said assessment with interest accruing thereon, shall be a lien upon the property abutting upon the street or streets upon which any said improvement is made, or upon such improvement from the commencement of the work, and shall remain a lien until fully paid, and shall have precedence over all other liens except ordinary taxes, and shall not be divested by any judicial sale, provided that such lien shall be limited to the lots or lands bounding or abutting on

such street or streets, or on such improvement, and not exceeding in depth therefrom one hundred and fifty feet." It is important to determine the time when the lien of the assessment in question must be regarded as having attached to the property subject to it. It is contended on the part of the appellant that it attached when the resolution ordering the paving to be done was adopted, or, at the latest, when the contract for it was entered into. It is the general rule that taxes are not liens upon property, unless made so by statute, or by virtue of authority conferred by statute. *Jaffray v. Anderson,* 66 Iowa, 718 (24 S. W. Rep. 527); Cooley, Tax'n, 445 *et seq.* And that is true of special assessments made on account of the improvement of streets. 2 Dillon, Mun. Corp., section 659; 24 Am. & Eng. Enc. Law, 76. Where a tax or special assessment is made a lien, the time at which the lien attaches must be ascertained from the statute or other authority which provides for it, and in this case it attached at "the commencement of the work." Is the adoption of a resolution directing that certain paving be done, or the letting of the contract therefor, or both, with the various preliminary steps which lead to them, the commencement of work within the meaning of the statute? It is undoubtedly true that there are many good reasons, independent of the statute, for making the lien of the assessment commence with the letting of the contract for making an improvement, if not from the adoption of the resolution ordering it; and it is also true that the legislative intent, if properly expressed, is controlling. We must gather that intent in this case from the statute itself. Section 2 of the statute refers to paving and curbing of streets and the construction of sewers; and authorizes contracts "either for the entire work in one contract or parts thereof in separate and

specified sections." Section 3 provides for a notice to
bidders, which shall state as nearly as practicable "the
extent of the work, the kind of materials to be fur-
nished," and "when the work shall be done." Section
5 makes it the duty of the city engineer "to furnish
proper grades and lines, and see that the work is
done in accordance with the ordinances and regu-
lations of the city, with respect to said grades
and lines." Section 6 provides for the issue of
bonds "from time to time as the work progresses."
Section 9 provides for the payment, on requisition,
of money received from the sale of the bonds,
upon proof "that work has been done or material
furnished to the amount of said requisition." In each
of these cases the word "work" is used to designate
labor, or the product of labor and material combined,
required to make the improvement, as separate and
distinct from the acts of the agents of the city prelimi-
nary to, and which terminate in, the formal execution
of the contract. The word is next found in that
part of section twelve, which we have set out, and we
are of the opinion that it is there used as in preceding
sections to designate that which is required of the
contractor to perform his part of the agreement. It
follows that the lien of the assessment for an improve-
ment made under the act in question attaches from
the time when labor is first done or material is first
furnished by the contractor in the making of the
improvement after the contract is made. The record
submitted to us fails to show when the work in ques-
tion was commenced. A resolution adopted by the
city council of the defendant on the second day of
May, 1891, to authorize the issue of bonds, recites that
"work has been commenced and is progressing" under
the contracts. But, if that be treated as competent
evidence to show the commencement of the work, it
does not show that it was commenced before the

deeds of Mrs. French to Westwood, and to the Eagle Manufacturing Company, were executed, and there is evidence on the part of the plaintiffs that nothing had been done under the contract for paving the part of Front street in question when the last of the two deeds was delivered. We therefore conclude that the work is not shown to have been commenced within the meaning of the statute, and that the lien of the assessment in controversy is not shown to have attached, when the deeds of Mrs. French took effect.

II. It is insisted, however, that the deeds were executed for the purpose of evading the lien of the assessment, and that, as against the defendant, they are fraudulent and void. The avowed purpose of the deed to Westwood was to defeat the assessment on all of the block excepting the part conveyed to him. Mrs. French was represented, in all of the transactions which ended in the giving the deeds, by her son, Judge French. He attempted to compromise the claim of the defendant for the assessment which would be made if the improvement should be completed, on the basis of paying according to the area of the block, but his offer was rejected. He then went to Chicago with a deed executed by Mrs. French, for the Westwood strip (excepting that a blank was left for the name of the grantee), was introduced to Westwood, who was a practicing lawyer of Chicago, and said, "Can I transfer you two feet of a block over in Davenport?" and Westwood answered, "What in the world will I do with it?" French replied: "I know what you can do with it. I will sell you a two-foot strip, and I will personally take an option on that property. I will lease it for a year, and take an option to lease it for another year; and I want an option to buy it, and I will pay you forty-one dollars for it now. That is what you can do with the property." Westwood said: "What will I have to pay?"

French answered: "You will have to pay twenty-five dollars." Westwood then asked for an explanation, and French told him the condition of the lot, and what the defendant was proposing to do. Westwood then consented to take the deed, and was paid forty-one dollars, of which twenty-five dollars were returned. It thus appears that Westwood was paid sixteen dollars to accept the deed. There is not now, and never has been, any attempt to conceal the fact that the conveyance to Westwood was intended to defeat the assessment in question upon all of the block not conveyed to him. To justify the conveyance, it is said that the entire block was worth about three thousand dollars; that the assessment in question amounts to one thousand two hundred ninety-two dollars and sixty-two cents; that the paving of Fourth street on the north side of the block has been agitated, and that, if it is done, the assessment therefor on the block would be two thousand and ninety dollars; and that the two assessments would amount to more than the entire value of the block. The case thus suggested would be one of much hardship, which might well be provided against by legislative enactment. But the question we are required to determine is whether the conveyance to Westwood should operate to relieve the portions of the block not conveyed to him from the assessment actually made. The transaction was not designed to be of any benefit to the grantor, excepting as it might enable her to evade the payment of a valid assessment. The grantee had no use or desire for the strip conveyed to him, and had to be paid money to induce him to accept it. The strip, considered by itself, had little or no practical value It is said it is valuable to sell to the owner of the adjoining part of the block, or to the defendant, to add to the street, or to erect thereon bill boards for advertising purposes. It is plain, however, that Westwood

did not accept it on account of its intrinsic value, but for the money paid him, and for what he might receive in addition if it should be taken from him under the option reserved. The entire transaction on the part of the grantor, from its inception to its close, was for the sole purpose of defeating the collection of a valid claim which it was known would accrue. The defendant had incurred an obligation by its contract for the paving when all of the block within one hundred and fifty feet of the street appeared to be liable for its proper share of the cost of the improvement; and, while no lien upon the block was then created, the conveyance to Westwood, if given effect, would operate as a fraud upon the defendant, for the reason that it was not made in good faith, nor was it a legitimate transaction. In law, it was fraudulent, and a court of equity will not interpose to give it effect; and the defendant, for the purposes of the assessment in question, may treat it as void. See *Dougherty v. Miller*, 36 Cal. 83.

III. We are next required to consider the effect of the conveyance to the Eagle Manufacturing Company. It was not a part of the transaction with Westwood, although it may have resulted in part from that transaction, and it may have been designed in part to protect the remainder of the block from assessment. But the company was at the time trying to acquire more property, and bought that adjacent to what it owned, whenever offered, on the best terms it could obtain. It had leased the part of the block north of the side-track, and used it for a lumber yard. The part south of the side-track not conveyed to Westwood was not accessible from a street, excepting at one point on Fourth street. Judge French proposed to sell it to the company, and accepted therefor its offer of four hundred dollars. In view of its situation, that price does not appear to have been an unreasonable one for

the grantor to accept.   The part sold was a substantial portion of the block, large enough to be used for ordinary business purposes.   It was leased by the company to a lessee which erected thereon a shed in the summer of the year 1891, which it has since used as a storehouse.   It is not unlawful for a person to buy and sell property with reference to taxes which may be levied upon it.   Liability for taxes is always an element affecting the value of taxable property which is considered by the careful investor.

Nor is it unlawful for a person to so use property, or to divide it in such a manner, as to reduce the burden of his taxes upon it, provided the use or division be in good faith, for legitimate purposes, and not merely a subterfuge to defeat a proper and valid assessment.   Applying these rules to the conveyance to the company, we conclude that the evidence fails to show that it was invalid or made for an illegal purpose, but shows that it was a reasonable and proper business transaction.

IV.   The effect of the conveyance remains to be determined.   We have seen that the conveyance to Westwood was in law fraudulent, and of no effect as against the assessment in question.   The company was represented in the purchase it made by its president, George W. French.   He knew that the paving had been ordered.   He states that he knew of the conveyance to Westwood when the purchase was made, but that he did not inquire why the conveyance had been made.   He does not deny that he knew the object it was designed to accomplish.   He and Judge French were brothers.   They owned two-thirds of the capital stock of the company, both were officers of it, and they occupied the same office.   They conferred together in regard to important matters which pertained to their mother's business.   The knowledge of George W. French, in his mind when he

acted for the company in making the purchase, must be held to be the knowledge of the company.   We are satisfied that he knew why the Westwood conveyance had been made when he acted for his company, or, if he did not have actual knowledge of it, that the facts which he knew would have caused a man of reasonable prudence to make inquiries which would have disclosed the purpose of the conveyance.   Therefore, the company purchased the portion of the block which it now owns with constructive, if not actual, knowledge of the fact that it was subject to the assessment in question, for the reason that the conveyance to Westwood was, in law, fraudulent, as against the defendant.   Hence the part of the block acquired by the company is liable, with the strip conveyed to Westwood, for the assessment.   But, since the conveyance to the company was for a lawful purpose, it had the effect to relieve the portion of the block northwest of it from that assessment.   See *Amery v. City of Keokuk*, 72 Iowa, 704 (30 N. W. Rep. 780).   The decree of the district court in favor of the Eagle Manufacturing Company is REVERSED, and the decree in favor of Frances W. French is AFFIRMED.