HALVOR HALVORSON, Appellee, v. DENNIS MULLIN et al.,
Appellants.

DEEDS: Construction—When Title Passes—Blank as To Grantee—
1  Breach of Warranty—Liens.    A warranty deed, *blank as to
grantee*, executed and delivered on receipt by grantor of full
consideration for the land conveyed, divests grantor of all title,
and precludes subsequently attaching liens from working a
breach of grantor's warranty.

PRINCIPLE APPLIED:   Mullin and Lockband traded lands.
Lockband's land was full consideration for Mullin's lands.   The
parties executed and delivered their respective deeds, the name
of grantee being blank in Mullin's deed to Lockband.   A few
months later, certain special assessments became liens on the
land conveyed by Mullin.   The grantee's name had not yet
been inserted in the deed.   A few months still later, Lockband
conveyed the land received from Mullin to one Halvorson, by
inserting Halvorson's name in the old deed from Mullin.   *Held*,
when Halvorson's name was inserted in the deed, it instantly
related back to the date of the *original* delivery by Mullin, and
the intervening liens did not constitute a breach of Mullin's
warranty.

MORTGAGES:   Transfer of Property—Trading "Equity For Equity"
2  —Assumption of Mortgage Debt—Mortgage as Part Consideration.
A trade of property strictly "equity for equity" imposes no
obligation on a grantee to pay a mortgage on the property re-
ceived.   To impose such obligation, it must appear that the
grantee retained the amount of the mortgage as part of the
consideration which he was to pay for the property.

MORTGAGES:   Equity—Definition.   An "equity" in property is
3  the surplus of value which may remain after the property has
been disposed of for the satisfaction of liens.

MORTGAGES:   Transfer of Property—Assumption of Mortgage Debt
4  —Transferee in Blank.   Even though one receiving a convey-
ance of land through a deed, blank as to grantee, might be
obligated to pay the amount of a mortgage on the property as
part of the consideration *he* was to pay, yet this obligation is
not passed on to a *subsequent* grantee, to whom the property
is conveyed by the former unnamed grantee by the expedient

of filling in the name of such subsequent purchaser in the deed as grantee, (a) unless said deed by its terms imposed such obligation, or (b) unless it is shown that the payment of such mortgage debt was part of the consideration which said subsequent purchaser was to pay.

**TAXATION:** Lien and Priority—Acts Necessary to Constitute Lien —Municipal Special Assessments. The filing with the county auditor of the notices and certificates relative to the proposing, and due and final authorization, of street improvements, is the *exclusive* method, as between vendor and vendee, for making assessments for such improvements, liens upon the lands. It follows that assessments which find their way into the regular tax lists, *without such filing*, are not liens. (Section 816, Code, 1897.)

**TAXATION:** Lien and Priority—Failure to Comply With Statutes— Municipal Special Assessments.    Principle recognized that taxes or special assessments do not become liens on real estate in the absence of strict compliance with statutes providing for a lien.

**TAXATION:** Sale of Land—Non-Lienable Quality of Tax As Affecting Right to Sell.    Principle recognized that the right of the public authorities to sell real estate for the nonpayment of taxes or assessments may exist, even though such taxes or assessments are not liens upon the lands as between a vendor and vendee.

*Appeal from Taylor District Court.*—H. K. EVANS, Judge.

WEDNESDAY, FEBRUARY 16, 1916.

SUPPLEMENTAL OPINION, WEDNESDAY, FEBRUARY 14, 1917.

ACTION for breach of warranty, in which defendants interposed a counterclaim praying recovery of an amount paid by them to discharge the remainder of a foreclosure decree not satisfied by the sale of the mortgaged land.    On hearing, judgment was entered for plaintiff as prayed, and the counterclaim dismissed.    The defendants appeal.—*Affirmed* in part and *Reversed* in part.

*W. M. Jackson* and *G. B. Haddock* for appellants.

*Henry & Henry* and *J. R. Plummer*, for appellee.

LADD, J.—On and prior to March 16, 1910, defendants owned Lot 3 of Everett's Subdivision 1 of the official plat of NW¼ NW¼ Section 4, in Township 78 North, of Range 24 West of the 5th P. M., in Des Moines; and one Emel Lockband owned the SE¼ of Section 24 and the NE¼ of Section 25, in Township 28 North, of Range 28, in Gay County, Kansas. They negotiated an exchange through agents, one Price acting for the Mullins, and the Wilson Land & Loan Company for Lockband, and consummated the same, Lockband conveying the Kansas land, estimated to be worth $8,000, to defendants, subject to a $2,000 mortgage, and defendants signed deeds to the property in Des Moines, valued at $12,000, with warranties "excepting two mortgages of $1,500 each and 1909 taxes and mortgage to Grant McPherrin of $2,500, with 8 per cent interest." When signed by defendants and their wives, the exception was followed by the words, "which second party assumes and agrees to pay," but the agent of Lockband objected; and, after John Mullin had obtained the consent of Dennis Mullin over the telephone, as he pretended, John struck this clause out, and delivered the deed to said agent and received that to the Kansas land. It turned out that Dennis Mullin knew nothing of such change and never consented thereto.

I. Such are the facts, and the first inquiry is whether plaintiff is entitled to recover the amounts paid by him in redeeming from the sale covering the paving, curb and gutter assessments. When these improvements were made does not appear from the record, nor is it shown when they first became a lien on the property. This happened when the city clerk filed with the county auditor "a written or printed copy of the notice of the resolution provided for [of necessity], with a true copy of the proof of publication thereof, together with a certificate of

1. DEEDS: construction: when title passes: blank as to grantee: breach of warranty: liens.

the clerk that an ordinance or resolution has been adopted directing the making or reconstruction of said street improvement or sewer." Section 816, Code Supplement, 1913; *Cemansky v. Fitch,* 121 Iowa 186. As the burden was on plaintiff to prove that these special taxes became a lien at such a time as to constitute a breach of the warranty contained in the deed, it is important to ascertain when such deed became effective in passing title, and at what time the warranty became effective. The plaintiff received from the Wilson Land & Loan Company the deed signed by the Mullins, in an exchange negotiated with them in March, 1911, and his name was then inserted therein as grantee. Shortly afterwards, he, through his attorney, redeemed the property from a tax sale had in December, 1910, by paying $561.76, being $16.13 on curb and gutter certificate, with $1.67 interest, and $464.53 on paving certificate, with $78.43 interest; and a special gutter tax of $16.28 also was paid. The general taxes of 1909 were included in the redemption.

If, upon filing in the name of the grantee, the conveyance related back to the date of the delivery of the deed by John Mullin to the Wilson Land & Loan Company for Lockband, then, of course, it must be found that no breach was proven. This is conceded by appellee, who contends that the Mullins were not divested of title until the name of the grantee was inserted. The evidence leaves no doubt that, after the deed was signed, John Mullin was authorized to deliver it to Lockband or his agent, and that it was handed to his agent with the design of delivering upon receipt of the conveyance of the Kansas land. In other words, the grantors had done everything they could to part with the title. That there was delay in inserting the name of the grantee was no fault of theirs. The Mullins then ceased to own the property, and any court would have recognized the equitable title as in Lockband, independently of the deed,

for he had paid full consideration therefor in conveying the Kansas land. *Santee v. Keefe,* 127 Iowa 128. In short, they retained no interest therein whatever. See *Logan v. Miller,* 106 Iowa 511. Upon inserting the name of the grantee, the deed became operative in passing the fee title as of its date. The situation is like that where an owner deposits a deed with another to be delivered on his death. When delivered, as directed, upon the owner's death, the deed relates back to the first delivery. *Dettmer v. Behrens,* 106 Iowa 585. So with a conveyance with name of the grantee left blank. The delivery is complete, and the grantor then parts with all his interest in the land, and, as title must be in some-one at all times, the deed, upon the insertion of the grantee's name, relates back and becomes operative from the delivery. Such, indeed, must be assumed to have been the intention of the parties, for it accords with the time ownership on the part of the grantor ceased by the delivery of the deed. It follows that the special assessments were not shown to have become liens on the land in time to constitute a breach of the warranty contained therein.

II. In the deed executed by the Mul-

2. MORTGAGES: transfer of property: trading "equity for equity:" assumption of mortgage debt: mortgage as part consideration.

lins, the McPherrin mortgage of $2,500 was merely excepted from the covenants. The assumption of payment was, as seen, stricken therefrom. There was no agreement, oral or written, to pay it, and, if the plaintiff is liable therefor, it is because of its having formed a part of the consideration for which the conveyance was executed. See *Wood v. Smith,* 51 Iowa 156; *Northwestern Nat. Bank v. Stone,* 97 Iowa 183; *Lamka v. Donnelly,* 163 Iowa 255. One Price, who acted as agent for defendants, interviewed Wilson, of the Wilson Land & Loan Company, agent for Lockband, and testified that Wilson, of said company, said he had a party who had a half section of land in Kansas, of which he de-

scribed the improvements and incumbrances, and that he would exchange, or thought he would exchange, equity for equity, and he would find out a little later and would see him.

"Q. What was the value placed on the Kansas land an acre? A. $25 an acre, with a mortgage of $2,000 on it; and I submitted the proposition to Mr. Wilson to change equity for equity and assume everything that was against each property, and I mentioned some taxes and one thing or another. He said, 'I do not know whether my man would do that or not but I can find out, I think, before you have to go home.' I was to come home that evening. Q. You mentioned the value of the Kansas land; what value was placed upon the Des Moines property? A. $12,000, with an incumbrance there of something over $6,000 or about $6,000. Q. Of incumbrance? A. Yes, sir. * * * I went down to the depot—it was nearly train time—John Mullin and myself—and Mr. Wilson come down there and said he had heard from his man and that he would trade, but would rather we would pay some back taxes that was there. I says, 'We can't do that,' I says, 'If we trade, you have got to assume liens and everything, taxes, mortgages and interests up to that time and all back taxes.' We talked it over there until nearly train time—just had a few minutes. He said he would trade that way if John would get the deed back the next day. Well, we just left it that way, verbal contract. John agreed to go and get the deed and get back there not later than two days."

The deed was returned as proposed, and Wilson thus described what occurred:

"I examined the deed at the time of its delivery. The words 'which second party assumes and agrees to pay' were stricken from the deed by John Mullin. The deed was presented wherein the grantee assumed and agreed to pay, this being contrary to the contract. I refused to accept

the deed. He then called his brother Dennis Mullin over the phone, and he advised me in the presence of my stenographer, Mrs. Rourk, that Mr. Dennis Mullin had given him authority, and that he would and did then and there erase, or rather drew a line through the words 'which grantee assumes and agrees to pay,' and after that was done he delivered the deed to me for our client, and we returned him the deed coming from Lockband. Mr. John Mullin gave us authority to put any person's name in the deed as grantee that we saw fit."

Mrs. Rourk confirmed this account.

3. MORTGAGES: equity: definition.

Authority to make such change is not questioned in the counterclaim, and no claim is based on the clause stricken. The terms of the exchange then were "equity for equity." By the word "equity," as so used, was meant, as defined in the Century dictionary:

"The remaining interest belonging to one who has pledged or mortgaged his property, or the surplus of value which may remain after the property has been disposed of for the satisfaction of liens."

The exchange was of what defendants had in the property in Des Moines for what Lockband had in the Kansas land. Though relative values and amounts of the incumbrance were estimated in making the deal, there is no evidence of a sale by either party for a specified sum, and no showing that a part of the consideration to be paid was withheld to cover the amount of the McPherrin mortgage. If the respective grantees were to assume incumbrances, as testified to by Price, the deal was not consummated on that basis, for the assumption was stricken from the deed by agreement. This circumstance tends strongly to confirm our conclusion that the amount of the mortgage debt was not withheld as part of an agreed consideration. Un-

doubtedly, values or estimated values were talked of in reaching a basis for exchange, but there was no agreement on the price to be paid either. The minds met on the proposition of trading equity for equity, only. The facts bring the case within the rule of *Bristol Sav. Bank v. Stiger*, 86 Iowa 344.

4. MORTGAGES: transfer of property: assumption of mortgage debt: transferee in blank.

Moreover, the plaintiff was not a party to that transaction, and, even though Lockband might have become chargeable for the payment of the mortgage debt upon being satisfied by defendants, it was not shown to have been a part of the consideration when Halvorson acquired the property. The deed advised him only of the existence of the mortgage and its exception from covenants of warranty. The clause assuming the mortgage had been stricken, and there was nothing to apprise him that the amount of the mortgage had been withheld from the consideration by the party from whom he obtained the deed, if such were the fact, and we are of opinion that he cannot be held therefor. Neither impliedly nor by express promise did he undertake to pay the same, and there is no principle upon which payment from him may be exacted.

Even if it were to be held that he, by taking the deed, stepped into the shoes of Lockband by having his name inserted in the deed instead of Lockband's, this would be true only as to what appeared on the face of the deed, and, looking at that, no liability would be created for the payment of this mortgage. Such was the ruling of the district court.

The judgment entered in favor of plaintiff is reversed and the dismissal of the counterclaim affirmed.—*Reversed* in part and *Affirmed* in part.

GAYNOR, C. J., EVANS and SALINGER, JJ., concur.

SUPPLEMENTAL OPINION.

WEDNESDAY, FEBRUARY 14, 1917.

**5. TAXATION: lien and priority: acts necessary to constitute lien: municipal special assessments.**

PER CURIAM: The opinion heretofore filed was responsive to the arguments presented, but in appellee's petition for rehearing he suggests that, inasmuch as the certificate of sale for taxes levied for special improvements was issued in December, 1910, such taxes must have been carried to the tax list prior to January 1st of that year, and thereby have become a lien on the property prior to the transfer of the lot to Lockband on March 16, 1910. As this might appear to have been negatived in the opinion, a rehearing was granted.

**6. TAXATION: lien and priority: failure to comply with statutes: municipal special assessments.**

Conceding that the sale of realty for taxes in December can only be had for taxes on the tax list January 1st, preceding, it does not follow that being on said list renders them a lien on the land against which levied.

"The lien on real estate for taxes has no existence unless there be some statute creating it, and such statute must be strictly construed." Desty on Taxation, p. 734; *Eagle Mfg. Co. v. City of Davenport,* 101 Iowa 493; *Jaffray v. Anderson,* 66 Iowa 718.

We have discovered no section of the Code, other than Section 816, referred to in the opinion, directing how special assessments may be made liens on realty. Section 826 of the Code, on which appellee relies, merely provides that:

"A certificate of levy of such special assessment, fixing the number of installments and time when payable, certified as correct by the clerk, shall be filed with the auditor of the county, or of each of the counties, in which such city is situated, and thereupon said special assessment as shown therein shall be placed on the tax list of the proper county."

Even though all the steps referred to be taken, a lien is not thereby effected unless Section 816 has been complied with. The validity of the subsequent tax sale in December following does not necessarily depend on the existence of a prior lien. The sale thereof may be had as of land under a judgment the lien of which has ceased by limitation. See *Stahl v. Roost,* 34 Iowa 475; *Hawkeye Ins. Co. v. Maxwell,* 119 Iowa 672; *Ritz v. Rea,* 155 Iowa 181. Something must be done in order to render special assessments or certificates thereof a lien, as between vendor and purchaser, and what that is, is specified in Section 816 of the Code, in providing that:

7. TAXATION: sale of land: non-lienable quality of tax as affecting right to sell.

"After a contract has been made by any city for the making or reconstruction of any street improvement or sewer, the clerk shall file with the auditor of the county, or each of the counties, in which said city is situated, a written or printed copy of the notice of the resolution provided for, with a true copy of the proof of publication thereof, together with a certificate of the clerk that an ordinance or resolution has been adopted directing the making or reconstruction of said street improvement or sewer. Thereupon all special taxes for the cost thereof, or any part of said cost, which are to be assessed and levied against real property, or any railway or street railway, together with all interest and penalties on all of said assessments, shall become and remain a lien on such property from the date of the filing of said papers with the county auditor until paid, and shall have precedence over all other liens except ordinary taxes, which shall not be divested by any judicial sale; but such lien for street improvements in case of abutting property shall not cover to exceed one hundred and fifty feet in depth from the abutting line. Any such assessment against a railway or street railway shall be a first and

paramount lien upon the track thereof within the limits of the city."

It is to be observed that, though this is not to be done until after the contract is made by the city, doing so is not exacted by the clerk of the city at any specified time, or before any date indicated. The evident design of the legislature was to indicate a method by which the special taxes levied or to be levied might be made a lien upon the property, and of course the only purpose to be served by this was to define the order of precedence between liens and indicate when such special taxes should become a lien as between vendor and vendee. Anyone interested may, by causing compliance with this section, effect a lien, but compliance therewith is not exacted by any official at any specified time, save that it must be after the city has entered into the contract; and therefore there is no room for any presumption in favor of the existence of such a lien, save as compliance with the statute is proven. As laid down in Page and Jones on Taxation by Assessment, Section 1277:

"The burden of proof rests upon the party who claims that a lien exists, and who is trying to enforce it, even if, by statute, land is to be sold for the non-payment of assessments in the same manner as it is sold for taxes, and if, by statute, tax sales are presumptive evidence of the validity of the tax."

See *Dederer v. Voorhies*, 81 N. Y. 153. Section 1400 of the Code has reference to general taxes only, dealt with by Title VII of the Code, in which that section is found.

We are of the opinion that the warranty contained in the deed executed by the defendants was not shown to have been breached, and for this reason adhere to the conclusion reached in the former opinion. Opinion adhered to.

GAYNOR, C. J., LADD, EVANS and SALINGER, JJ., concur.