W. F. JOHNSTON et al., Appellants, v. TOM ROBERTSON, Appellee.

DRAINS: Damages—Right of Equitable Owner—Trustee Holding
1 Title. An equitable owner of real estate under an executory contract of purchase has ample right to file a claim for damages consequent on the construction, through said land, of a public drainage improvement. It follows that the legal owner who has contracted to sell and who holds the legal title in trust for the vendee pending the execution of a conveyance, and who acts in good faith and without concealment, is under no obligation to file a claim for the benefit of said equitable owner, who does not claim that he was not aware of the pendency of such drainage proceedings. (See Sec. 1989-a3, Code Supp., 1913.)

**VENDOR AND PURCHASER:** Construction and Operation of Contract—Equitable Ownership. Principle recognized that one who enters into a valid contract to purchase real estate becomes the equitable owner thereof from the date of the contract.

**DRAINS:** Right of Way—Nature of Taking. Principle recognized that the taking of lands for a public drainage improvement does not deprive the owner of title to the land taken. Such taking leaves the legal title as it formerly existed, but imposes an easement thereon. (See Sec. 1989-a2, Code Supp., 1913.)

**COVENANTS:** Covenants of Warranty—Breach—Drainage Easement. Neither the covenant of warranty of good and merchantable title, clear of all incumbrances, nor a contract promising conveyance with such covenants of warranty is breached by the fact that an *easement* for a public drainage improvement has been established over said land.

**VENDOR AND PURCHASER:** Rights and Liabilities—Taxes and Assessments—Drainage Assessments. In the absence of any contrary provision in contract ·or deed, the vendee of land concerning which public drainage ·improvement proceedings are pending at the time, must pay special assessments *levied subsequent to the making of the contract of sale, and subsequent to the deed, in fulfillment thereof.* (See Secs. 815, 1015, Code, 1897; Secs. 816, 1400, 1989-a12, 1989-a45, Code Supp., 1913.)

*Appeal from Louisa District Court.*—OSCAR HALE, Judge.

WEDNESDAY, APRIL 4, 1917.

THIS is an action at law to recover damages for an alleged breach of the provisions of a written contract to convey to plaintiffs certain real estate, and, in a second count, the damages resulting from an alleged failure of appellee to perform the duties imposed upon him by law as a ·trustee holding legal title to said real estate, pending the date fixed for the execution and delivery of a deed of conveyance. Defendant's demurrer to the petition was sustained, and judgment rendered against plaintiffs for costs. Plaintiffs appeal.—*Affirmed.*

*Weaver, Briggs & Erwin,* and *C. E. Walters,* for appellants.

*Molesberry & Reaney,* for appellee.

EVANS, J.—Plaintiffs contracted for a farm of about 656 acres. The conveyance was to be subject to a mortgage of $30,000 on the land. Count 1 of the petition alleged, substantially, that on August 17, 1910, plaintiffs entered into a written contract with the defendant for the exchange of certain real estate; that defendant therein agreed to execute and deliver to appellants a good and sufficient warranty deed for the real estate to be by him conveyed to them, together with an abstract of title showing good and merchantable title in him on March 1, 1911. (A copy of the contract is set out as an exhibit and part of the petition.) The petition alleges further that, by the terms of said contract, the title to the real estate to be conveyed by defendant should be a good and merchantable title; that on February 28, 1911, defendant executed a deed of conveyance to the property described in the contract. (A copy of the deed is attached as an exhibit and made a part of the petition.) It is further alleged that defendant did not have, and was not able to, nor did he, convey a good and merchantable title to said real estate as provided in the contract, for the reason that, at the time of the execution of the contract, there had been filed a petition, and proceedings begun, for the establishing of a levee district known as District No. 14 of Louisa County, Iowa, and the date of a meeting of the board of supervisors of said county for the hearing of objections to the establishment of the same and claims for damages had been fixed, and notice thereof given; that the board of supervisors proceeded to and did thereafter establish said district, and did construct said dike or levee and make a tax levy for benefits upon the district; that, by virtue of said proceedings and the establishment of said district and construction of levee, a part of appellants' land was condemned and taken for the establishment of the dike and for obtaining earth and ma-

1. DRAINS: damages: right of equitable owner: trustee holding title.

terial therefor, or rendered useless by reason of the construction and erection of said dike; that, at the time of the conveyance of said real estate, the same was subject to the easement of said dike and drain ditch, and all the rights the said district had therein, which rights it still has and exercises; that said lands were conveyed by warranty deed, but were not clear and free of incumbrances; and that the land rendered worthless before the construction of said levee is worth $100 per acre; and that appellants have paid $2,900, special assessment taxes; and that, by reason of the breach of said covenants and agreements contained in said written contract, plaintiffs have been damaged in the sum of $5,400.

Though the petition does not specifically state that the deed was accepted by appellants, such is the fair inference from reading the entire petition. The petition alleges that, by virtue of the proceedings of the board of supervisors in the establishment of said drainage district, the lands which defendant sold by the contract to plaintiffs have been charged with special assessments aggregating $2,900 or more, so that it would seem that the deed must have been accepted; otherwise the assessment could not have been made against plaintiffs. Furthermore, appellants allege in the second count that defendant held title from the date of the contract to the date of the deed as trustee, and that, as such trustee, defendant was under a legal duty to file claims for damages. In the second count they also allege that appellee executed a deed in conformity to the contract. The plain inference is that plaintiffs have held the legal title to the land since March 1, 1911.

From the allegations in the petition, it is uncertain as to whether or not the establishment of the levee district had been so far advanced that the tax had been assessed and levied against the lands included in the district at the time the conveyance was made, by the deed of February 28,

1911. The petition does not state that the levee tax and assessment had been levied at the time of the conveyance, but rather, as we read the petition, that it had been assessed and levied prior to the bringing of this action. The second count of the petition, after setting out the facts alleged in the first count, alleges further that, prior to August 17, 1910, defendant was the record owner of all said real estate, and had notice of the proceedings taken by the board of supervisors in the matter of the establishment of the drainage district; that he continued to hold the legal title to said real estate and retained possession after the execution of the contract until about the 1st day of March, 1911; that defendant failed to file any claim with the board of supervisors for damages, by reason of the establishment of said district, to the lands which he had in the contract agreed to, and did afterwards, convey to plaintiff, either on his own behalf or on their behalf; that, as such trustee, holding said legal title, the defendant failed and neglected to perform the duties of said trustee, in that he failed to file said claim as alleged, and that, through his failure and neglect to care for and protect the property of appellants then in his possession, the legal title of which he held, they have been damaged in the sum of $5,400. Defendant's demurrer is in this form:

"Comes now the defendant and demurs to Count 1 of petition, and shows to the court the following grounds therefor:

"(1)   The facts stated do not entitle the plaintiffs to the relief demanded, for the reason that the facts stated show that the defendant executed and delivered them a deed in accordance with the contract. After this was done, no action remained on the contract, because the vendee took for his security of title the deed with such covenants and warranty as his contract called for.

"(2)   The facts stated do not show that a good and

merchantable title was not furnished free from all encumbrances.

"As to Count 2, the facts stated do not show that there was any duty on the part of the defendant to file a claim for damages with the board of supervisors."

I.    The argument of appellants rests in the main upon the following propositions:

1.    That only the record owner of land can file a claim for damages for the location of a ditch in a drainage proceeding, and that a merely equitable owner under an executory contract cannot file such claim.

2.    That, because the defendant was the record owner, it was his duty as a trustee holding the legal title to file a claim in his own name for the benefit of the plaintiffs.

3.    That, because of the establishment of the ditch and dike, the defendant failed to convey all the land which he had contracted to convey, and that, therefore, there was a breach of the contract, notwithstanding the acceptance of the deed.

The argument in support of the first of the above propositions is that only the record owner of land is entitled to notice, and, therefore, only the record owner can be heard to claim damages. We disagree with both premise and conclusion. Section 1989-a3, Code Supp., 1913, does provide in effect for notice to be given by name "to the owner of each tract * * * as shown by the transfer books of the auditor's office * * * and also to all other persons whom it may concern * * * (without naming individuals)." The same section recognizes the rights of "other persons owning or having an interest in any land or property affected" by providing a method whereby they may receive through an agent 20 days' notice if they file with the auditor the name and address of such proposed agent. While this section of the statute only provides for notice by name to persons whose names appear upon the transfer books

of the auditor's office, there is nothing in the statute which negatives the right of any person having an interest in the land affected to appear in response to the published notice. Indeed, the very purpose of addressing such notice to "all whom it may concern," is to give opportunity of notice to landowners whose names are not ascertainable from the transfer books. ·If the appellants' contention is correct, then, an owner holding a complete legal title could not be heard to claim damages if his name failed to appear upon the transfer books. Under a proper reading of the statute, we think the principal disadvantage resulting to such owner by reason of the absence of his name from the transfer books would be that he would receive no direct notice by name.

2. VENDOR AND PURCHASER: construction and operation of contract: equitable ownership.

The plaintiffs became equitable owners of the land by contract of purchase on August 17, 1910. Why could they not thereafter have filed a claim for damages in their own behalf and in their own name? Did they not have an interest in the lands affected by the proceeding? Were they not fairly included among "all persons whom it may concern?" Under our repeated holdings, they were the owners of the land in every equitable sense. That, as such, they could claim damages and resist proposed assessment of benefits, is a proposition which has been frequently implied in our previous cases. *Bradford v. Board of Supervisors,* 160 Iowa 206; *Taylor v. Drainage District,* 167 Iowa, 42; *Christenson v. Board of Supervisors,* 174 Iowa 724.

In *Wolfe v. Iowa R. & L. Co.,* 178 Iowa 1, which was a railway condemnation proceeding, we went into this question fully. We held therein that the purchaser of land under an executory contract was entitled to claim damages for such condemnation, and was entitled to prosecute an appeal from the award of the sheriff's jury as such equitable owner. In that case, the Wolfes were the purchasers

under executory contract from Maybauer.   In that case we said:

"It is manifest from the foregoing that the legal title of the farm in question rested in Maybauer until March 1, 1914.   It is also manifest that the contract in question was obligatory upon, and enforceable against, both parties thereto.   Neither party could escape the provisions of this contract except by the subsequent consent of the other.   Such subsequent consent would amount only to a subsequent contract.   Under this contract, the full beneficial interest of Maybauer in the land was the agreed purchase price to be paid.   Under the same contract, the Wolfes became subject to every future unfavorable contingency, and entitled to the benefit of every favorable one.   Future depreciation of value would fall upon them.   Future appreciation would inure to them.   Future appreciation or depreciation could affect Maybauer only as affecting his security for the purchase price.   The contract was entered into before the appropriation of the right of way.   It was known to the parties that a location of a right of way was in prospect as a possibility, but no rights had been asserted by or accrued to the railway company.   In the absence of a contrary provision in the contract, it would seem too clear for dispute that if, after the execution of such binding contract, the premises should be depreciated by the appropriation of a right of way, the damages accruing by reason of such appropriation should accrue to the purchasers, to the extent at least of having the same applied in reduction of the purchase price.   *   *   *   In the case before us, it is not very material whether we call the Wolfes the equitable owners of the land or whether we characterize their interest by some other term.   They did have a fixed and vested interest in the real estate as such.   Their interest was clearly affected by the appropriation of the right of way across such farm. The mutual rights of the plaintiff Maybauer and the Wolfes

were entirely consistent; one was not adverse to the other. Both purchaser and seller understood their relative rights alike. In order to be 'owners,' within the meaning of the condemnation statute, it is not necessary that the ownership be exclusive, nor that it be vested with a legal title as distinguished from an equitable interest. We have held that, under appropriate circumstances, a mortgagee may claim the benefit of damages to be awarded. *Sawyer v. Landers,* 56 Iowa 422; *Schafer v. Schafer,* 75 Iowa 349."

The ground of the holding in that case is applicable here; likewise the quotations from the authorities which are included in the opinion. We are of opinion, therefore, that the equitable owner of land under executory contract is entitled to protect his interest therein in drainage proceedings precisely as any other owner.

II. Turning now to the question of trusteeship of the seller for the purchaser, and the duty of the seller to file claim for the benefit of the purchaser: The petition is predicated upon the theory that the seller was under legal duty as trustee to file such claim for the benefit of the purchaser because, under the law, the seller could, and the purchaser could not, file such claim. The case made by the petition is, briefly, that the contract of the parties was entered into on August 17, 1910; that, prior to this time, the proceedings had been begun, and notices had been given. All this was in the past. If, prior to August 17, 1910, the defendant had been negligent of his own interest, and had failed to file a claim when, in prudence, he ought to have done so, or had conceived a purpose not to file a claim for reasons satisfactory to himself, then plaintiffs are in no position to complain of that. No past dereliction of the defendant could give rise to a cause of action in their favor. If the defendant is liable to them, it is due to some dereliction arising at the time he entered into the contract and became their trustee. Whether or not the plaintiffs knew that

the proceedings were pending, does not clearly appear from the petition.   Assuming for the moment that they did know, then we have a case that is precisely like *Stuhr v. Butter-field,* 151 Iowa 736, except that, in the *Stuhr* case, a deed was executed rather than a contract.   If we are right in the view that the purchasers could themselves have filed a claim in their own behalf, then no duty on the part of the defendant to do so was implied by law.   If the plaintiffs did not know of the pending proceedings, such fact could very materially affect the rights and duties of the parties. If the defendant intentionally concealed or withheld knowledge of the fact from the plaintiffs, such action might amount to a fraud and furnish a basis of liability.   But no fraud is charged.   The petition does not allege that the plaintiffs were without knowledge of the pendency of the proceeding at the time the contract was entered into.   Without such allegation, the case is not materially different in its facts from the *Stuhr* case, supra.

III.   The action is brought upon the contract, and not upon the covenants of warranty in the deed.   It is contended that the contract was not merged, notwithstanding the acceptance by the plaintiffs of a warranty deed. The argument is that the defendant conveyed to the plaintiffs by the warranty deed less land than was called for by the contract, and that this amounted to a breach of the contract.   The statement that the defendant conveyed by the deed less land than was called for by the contract, is a mere legal conclusion.   The deed purported to convey and warrant title to the same land, and all of it, that was included in the contract.   Both deed and contract covered precisely the same description.   It is said that a part of the land had already been taken for the uses of the dike and ditch before the execution of the deed.   It was taken, however, only in the sense that it was subjected to the

3. DRAINS: right of way: nature of taking.

public easement. It was taken as a highway is taken, the
fee being still in the landowner, subject to the public ease-

ment. There was no taking and no encum-

**4. COVENANTS:**
**covenants of**
**warranty:**
**breach: drain-**
**age easement.**

brance in any other sense. So that the ul-
timate question is, Was the establishment
of this easement a taking or an encum-
brance within the meaning of the law, so as to constitute
a breach of covenant of warranty or a breach of contract
promising conveyance and covenants of warranty? The.
*Stuhr* case, supra, has answered this question in the neg-
ative, and has thus fixed the law of this jurisdiction.
Whether the plaintiffs should have sued on their covenants
of warranty is a question we need not determine. Apart
from the question of remedy, their ultimate rights are the
same whether their suit be maintained on the contract or
on the covenants. For instance, if they had brought this
action on the contract before the warranty deed was exe-
cuted or accepted, they would have been confronted with
the *Stuhr* case; and, if they were to bring the action now
upon the covenants, they would be confronted in like man-
ner.

IV. The remaining question in the

**5. VENDOR AND**
**PURCHASER:**
**rights and**
**liabilities:**
**taxes and as-**
**sessments:**
**drainage as-**
**sessments.**

case is whether or not the subsequent assess-
ment of benefits against the plaintiffs
amounted to a breach of the conditions of
the contract. The drainage proceedings had
been commenced at the time the contract
was entered into, and no mention is made in the contract
of taxes or assessments levied or made, or in process of
establishment.

Ordinarily, a vendor in such a case, especially if he be
in possession, is bound to pay the taxes or liens which at-
tach to the land, in the interim between the making of the
contract and the execution of the deed, for the reason that
assessments to be made in proceedings in process are pre-

sumed to be within the contemplation of the parties, and the price is fixed accordingly. Moreover, as to ordinary taxes, the vendor, especially if he be in possession, or is enjoying the rents and profits thereof under a lease not yet expired, the vendee not being in actual possession, is required to pay the taxes, in the absence of express statutory or contract provision. That this is the rule as to ordinary taxes is clear from the authorities. *Fitzgerald v. Spain,* 30 Ark. 95; *Lamborn v. County Commissioners,* 97 U. S. 181; *Farber v. Purdy,* 69 Mo. 601; *Morrison v. Wasson,* 79 Ind. 477. See as further sustaining these views *Pinkerton v. Boston & A. R. Co.,* 109 Mass. 527; *Clarke v. Ramuz,* 2 Q. B. (1891) 456; also *Wolfe v. Iowa R. & L. Co.,* supra.

This rule is especially applicable in an exchange of properties. What is the rule as to special assessments? They are conclusively held to have been of benefit to the land, and that the land has been benefited to the extent thereof; but they are, nevertheless, liens or encumbrances against the property, and the question in cases of transfer pending their establishment is, Which party is to pay for them, the vendor or the purchaser? This all depends, of course, upon the construction of the contract between the parties, if it is silent on the point. The authorities are conflicting upon this proposition, or rather upon the construction which should be placed upon such a contract as is here before us. In some of the states it is held that such assessments do not become liens until they are ascertained in the manner prescribed by law, and that, under such contracts, the vendee, under an executory contract, must pay such as were ascertained after the deed is due. See *Lathers v. Keogh,* (N. Y.) 17 N. E. 131; *Gotthelf v. Stranahan,* (N. Y.) 34 N. E. 286; *Tull v. Royston,* (Kans.) 2 Pac. 866.

On the other hand, it is held in many states that such assessments are liens from the time the improvements are

made, and that it is immaterial that the exact amount of the assessment was not ascertained at the time of the sale or the execution of the deed. See *Lafferty v. Milligan,* (Pa.) 30 Atl. 1030; *Hartshorn v. Cleveland,* (N. J.) 19 Atl. 974. And in Massachusetts it is held that the liability arises from the date of the order for the improvement. *Carr v. Dooley,* 119 Mass. 294; *Blackie v. Hudson,* 117 Mass. 181; *Coburn v. Litchfield,* 132 Mass. 449; *Hutchins v. Moody,* 30 Vt. 655 (34 Vt. 433); *Peters v. Myers,* 22 Wis. 602.

In *Blackie's* case, supra, it is said that the liability to an assessment became an encumbrance at the time the order for the widening of a street was made. And in *Carr's* case, supra, the same doctrine was applied to a sewer assessment, the court saying that the assessment became an encumbrance when the order for the construction of the sewer was made. See, also, *Cotting v. Commonwealth,* (Mass.) 91 N. E. 900. Many of these cases turn, however, upon the construction of statutes, and, save for the strength of the reasoning found therein, have no special significance. Our statutes provide that, as between vendor and vendee, deferred installments of special assessments shall become a lien on the 31st day of December of the year next preceding that in which it is due and payable. Sec. 1989-a12, Code Supp., 1913. Again, Sec. 1989-a45, Code Supp., 1913, provides that special assessments for drainage purposes become a lien when *levied,* to the same extent and in the same manner as taxes levied for county and state purposes. And Sec. 1015, Code, 1897, provides that, as between vendor and vendee, general taxes become a lien on the 31st day of December following the *levy.* But Sec. 816, Code Supp., 1913, provides that special assessments become a lien upon the filing of the proper papers with the county auditor. In view of these statutory provisions, and the allegations of the petition with reference to the time when the assessment was made, plaintiffs are not entitled to recover the amount of the

special assessments, for the reason that it was not within the contemplation of the parties, when they made their contract of exchange, that defendant should do so. They cannot be recovered in this form of an action in any event.

The better rule, we think, is that, where nothing is said about such assessments, either in the contract or the deed, such as are *levied* after the contract and deed are executed do not constitute an encumbrance upon the property conveyed, for the reason that the grantee received the benefits resulting from the improvement, and he should pay the assessments therefor. *Carey v. Gundlefinger,* 12 Ind. App. 645; *Gotthelf v. Stranahan,* (N. Y.) 34 N. E. 286. This is the effect of the decision in *Stuhr v. Butterfield,* supra. Of course, much depends upon the nature of the contract and the intent of the parties. It may be that, if the improvement is completed at the time the contract is made, and all that remains to be done is to make the assessment, and the contract says nothing about the assessment, but the deed is one of general warranty, and it appears that the assessment was made intermediate between the contract and the deed, the vendor, or grantor, should be held liable for the taxes. This is pointed out in *Gotthelf's* case, supra. That case is an interesting one, and will bear reading. In *Cemansky v. Fitch,* 121 Iowa 186, it was held that a covenant against encumbrances is a covenant *in praesenti,* and does not include charges for street improvements, the lien for which had not attached. Much said in that case is applicable here. See, also, *Eagle Mfg. Co. v. City of Davenport,* 101 Iowa 493.

We reach the conclusion that the plaintiffs are not entitled to recover upon either branch of the case. For these reasons, the judgment must be affirmed.—*Affirmed.*

GAYNOR, C. J., LADD, PRESTON and SALINGER, JJ., concur.