Henry Frankel, Appellant, v. Abraham H. Blank, Appellee.

May 3, 1927.

Rehearing Denied January 13, 1928.

*Stipp, Perry, Bannister & Starzinger,* for appellant.

*Sargent, Gamble & Read,* for appellee.

VERMILION, J.—On May 3, 1923, the parties entered into a written contract whereby the defendant and appellee, Blank, sold to the appellant, Frankel, a 99-year lease held by him  upon certain real estate in the city of Des Moines. In the contract it was expressly agreed that the premises should be "free and clear from any and all liens and incumbrances up to June 1, 1923, except only" a certain mortgage. On May 24, 1923, in pursuance of such contract, the appellee executed and delivered to the appellant what is designated as "an instrument of assignment and conveyance," whereby he assigned and transferred the lease to appellant, and expressly covenanted and agreed that "said premises are free and clear from any and all liens and incumbrances whatever," except the mortgage. The instrument further provided that the appellant, by accepting the same, assumed and agreed to perform and discharge all duties and obligations assumed by the appellee in the lease. The lease provided that the appellee, the lessee therein, should, in addition to the monthly rentals provided for, "pay and discharge before they became delinquent all regular taxes" and "all special taxes, public rates assessments, and charges levied upon or against said premises."

The property in question was within the limits of a district established by the city council of the city of Des Moines as subject to assessment for a designated street improvement, the opening, widening, and extension of Keosauqua Way. A schedule of proposed assessments for the cost of the improvement was prepared and filed, which, after due notice and opportunity for the filing of objection, was, on December 28, 1922; by resolution of the city council approved. The amount of the assessment against the property in question was $1,859.59. On January 27, 1923, the appellee signed a waiver of "any objection to error, inequality, irregularity or illegality as to said assessment," in consideration of having the right to pay the assessment in 20 equal annual installments, as provided by a resolution passed by the city council, and paid to the city treasurer the first of such installments, with the accrued interest on the unpaid portion of the assessment.

It is conceded that no part of the cost of the improvement for which the assessment was levied was done under contract, and that no such certificate as was provided for by Section 816, Code Supplement of 1913 (Section 6007, Code of 1924), was filed with the county auditor prior to June 1, 1923.

The action is to recover the amount of the unpaid special assessment and interest, upon the appellee's covenant that the premises were free and clear of liens and incumbrances. The case turns upon whether the amount of the special assessment was a lien or incumbrance on the premises on June 1, 1923.

I. Was the special assessment a lien on the premises on June 1, 1923?

Section 816 provided, in substance, that, after a contract had been made by a city for a street improvement, the city clerk should file with the county auditor a copy of the notice of the resolution provided for, and a copy of the proof of publication thereof, with a certificate that an ordinance or resolution directing the making of the improvement had been adopted, and that thereupon special taxes for the cost of the improvement should become a lien on the property from the date of filing such papers. It is the contention of appellant that this statute was not, in any event, applicable to the assessment in question, for the reason that

no contract was made by the city for the improvement, and that the tax became a lien, under the provisions of Section 1400, Code of 1897, when it was definitely known what the charge would be.. In this connection, reliance is put upon what is said in *Plymouth County v. Moore*, 114 Iowa 700; *Larson v. Hamilton County*, 123 Iowa 485, and *Gates v. Wirth*, 181 Iowa 19. The first two cases involved the lien of taxes upon stocks of goods. The lien was created by statute; the only question was when it attached. In the last, the question arose between a life tenant and a remainderman as to who should pay taxes on the land where the life estate terminated after assessment and before levy. These cases involved general taxes, and are not in point.

It is well settled that a lien on real estate for taxes has no existence unless there be some statute creating it, and that such a statute is to be strictly construed. *Jaffray & Co. v. Anderson*, 66 Iowa 718; *Eagle Mfg. Co. v. City of Davenport*, 101 Iowa 493; *Cemansky v. Fitch*, 121 Iowa 186; *Halvorson v. Mullin*, 179 Iowa 293. In *Halvorson v. Mullin*, supra, we said that there was no statute other than Section 816, directing how special assessments for street improvements could be made a lien on realty, and that Section 1400 had reference to general taxes only. The latter statement is characterized by counsel for appellant as dictum, but this is incorrect. In that case, as here, the question was when a special assessment for street improvement became a lien on real property, as between vendor and vendee. The question decided on the original submission was whether there was a lien under Section 816, and that depended on when title passed under a deed in blank. It appears to have been conceded that if, upon inserting the name of a grantee, the conveyance related back to the date of delivery of the deed, there was no breach of the covenant against liens, for the reason that at that date there was no lien, under Section 816. We so held. Upon rehearing, it was urged that there was a lien on the date of delivery of the deed, because the tax then appeared on the tax list. In response to this contention, we said, in a supplemental opinion:

"Conceding that the sale of realty for taxes in December can only be had for taxes on the tax list January 1st preced-

ing, it does not follow that being on said list renders them a lien on the land against which levied."

We also said:

"The validity of the subsequent tax sale in December following does not necessarily depend on the existence of a prior lien. * * * Something must be done in order to render special assessments or certificates thereof a lien, as between vendor and purchaser, and what that is, is specified in Section 816 * * *."

It was in this connection that we said that Section 1400 had reference to general taxes only. There is no claim that the special assessment in question here appeared on the tax list on June 1, 1923.

Since admittedly the steps pointed out in Section 816 were not taken, at least prior to June 1, 1923, it is unnecessary to consider whether, in view of the fact that there was no contract for the improvement, that section was, in any event, applicable. Nor are we, by contemplating the possibility that the legislature has made no provision for such a tax to become a lien, in the absence of a contract for the improvement, called upon to say that it does become a lien upon the happening of some particular event. As we have seen, the lien for taxes is purely statutory, and the right to sell the property for taxes does not depend upon the existence of a prior lien. *Halvorson v. Mullin,* supra.

The burden was on appellant to establish a breach of the covenant by showing the existence of a lien for the special assessment on June 1, 1923. This he failed to do.

II. But it is urged that, if not a lien, the special assessment was, on and prior to June 1, 1923, an incumbrance against the premises and leasehold.

Incumbrance is a broader term than lien. There may be an incumbrance that is not a lien. It has been defined as a "right in a third person in the land in question, to the diminution of the value of the land, though consistent with the passing of the fee by the deed of conveyance" *(Barlow v. McKinley,* 24 Iowa 69), and as " 'a burden upon the land depreciative of its value; such as any lien, easement, or servitude which, though adverse to the interest of the landowner, does not conflict with the conveyance of the land in fee' " *(First Unitarian Soc. v. Citizens Sav. & Tr. Co.,* 162 Iowa 389). See, also, 20 Corpus

Juris 1250. Incumbrances are classified as (1) those which affect title, and (2) those relating to the physical condition of the realty. *First Unitarian Soc. v. Citizens Sav. & Tr. Co.*, supra. If an incumbrance existed here, it was of the first class mentioned.

The question presented on this branch of the case has been decided adversely to the contention of the appellant in *Cemansky v. Fitch*, supra. That was an action for breach of a covenant against incumbrances, where there was a special assessment for the construction of a sidewalk. The improvement had been ordered and the work completed before the execution of the conveyance containing the covenant, but the assessment by the city council and certification under Section 816 were made after the conveyance. We there said:

"But the statute fixes the filing of proper proof with the auditor, rather than making of the assessment, as the time the lien shall attach, and prior thereto it did not constitute an incumbrance such as contemplated by the covenants contained in the deed. *Tull v. Royston*, 30 Kan. 617 (2 Pac. Rep. 866); *Eagle Mfg. Co. v. City of Davenport*, supra. See *Harper v. Dowdney*, 113 N. Y. 644 (21 N. E. Rep. 63); 8 Am. & Eng. Ency. of Law, 127. But appellee argues that the right to have the cost of the sidewalk established as a lien was an incumbrance, or, at least, a 'lawful claim,' against the property. An incumbrance is 'any right to, or interest in, land which may subsist in third persons to the diminution in value of the land, though consistent with the passing of the fee by a deed of conveyance.' But a mere possibility of establishing a right to, or interest in, land is not within this definition. The covenant against liens and incumbrances is a covenant *in praesenti*, and does not relate to those which may thereafter attach. If broken at all, it is broken when the conveyance is executed. *Ingalls v. Cooke*, 21 Iowa 560; *Barlow v. Bank*, 63 N. Y. 399 (20 Am. Rep. 547). That an assessment may be levied and an incumbrance subsequently created by following the statutory provisions does not amount to a present incumbrance."

Nor do we think that the fact that the appellee had waived irregularities or illegality in the assessment, and thereby secured the right to pay it in installments, can affect the relation of the assessment to the realty. What was waived was the right

to contest the assessment as made, and what was secured was the right to pay it in installments, instead of as a whole. Both before and after the waiver, the only right possessed by the city in respect to the property was the right to thereafter make the assessment a lien, by taking the steps pointed out by the statute. Or, if a right existed to take thereafter other steps by which the property might be subjected to the payment of the assessment *(Halvorson v. Mullin,* supra), the mere existence of such a right was no more an incumbrance than the right to create a lien by following the statute. As said in *Cemansky v. Fitch,* supra, the mere possibility of establishing a right to, or interest in, land is not an incumbrance, and a covenant against incumbrances is a covenant *in praesenti,* and does not relate to those which may thereafter attach. See, also, *Johnston v. Robertson,* 179 Iowa 838.

Again, appellant failed to carry the burden of establishing a breach of the covenant against incumbrances on or prior to June 1, 1923.

A further provision of the instrument of assignment and conveyance that possession of the premises shall be given June 1, 1923, "as of which last date all taxes that are a lien upon said premises shall be paid by said Abraham H. Blank," is entitled to consideration in this connection, as lending some support to the conclusion reached.

We are of the opinion that the judgment was right, and it is —*Affirmed.*

EVANS, C. J., and STEVENS, FAVILLE, and KINDIG, JJ., concur.