# ABBOT v. PETER.

No. 6529. Decided December 1, 1943. (143 P. 2d 606.)

*Harley W. Gustin,* of Salt Lake City, for appellant.

*Rawlins, Wallace & Black,* of Salt Lake City, for respondent.

WOLFE, Chief Justice.

Suit to rescind a contract and recover the consideration paid. The trial court found that the contract was entered into "under a mutual mistake of fact—and that due to said mistake of fact there was a complete failure of consideration, and that the money paid by the plaintiff to the defendant was received by the defendant without any consideration whatsoever." Judgment was entered for $1,000 in favor of the plaintiff and the defendant appealed.

The defendant, Charles Peter, entered into a contract with the plaintiff, S. L. Abbot, under the terms of which the plaintiff was to obtain the exclusive license to manufacture and sell throughout specific territories fertilizer, soil builders, and similar products involving certain processes, methods and developments which were patented. The patents were controlled by the defendant. The negotiations leading up to the execution of the contract brought to light the fact that the defendant had previously entered into a similar contract with one Lawson who purported to act as agent for the Soil-Aid Corporation of California.

This contract with Lawson purported to give to Soil-Aid Corporation the exclusive right to manufacture and sell these various products in certain specific territories which territories embraced all of the areas covered by the contract being negotiated by the plaintiff and defendant. Before proceeding to execute the contract, the plaintiff informed the defendant that he would not be interested in this contract unless he could be assured that he would obtain the exclusive right to operate in the designated territories. The contract finally executed as a result of these negotiations contained an express provision in which the licensor, the defendant, warranted to the licensee, the plaintiff, that he had the full right and authority to grant the licenses, rights and privileges granted in the contract, and further warranted that no licenses, shop rights or rights or privileges of any kind were in existence and outstanding under the Letters Patent for these territories.

A short time after the plaintiff-defendant contract was executed the plaintiff commenced this suit to have it rescinded. As grounds for rescission the plaintiff urged that (1) this contract was executed under a mistaken belief on the part of both parties that the contract with Lawson had been cancelled when in fact it had not been; and (2) that this mutual mistake was a mistake of *fact* which would warrant a rescission of the contract. The court held for the plaintiff on both issues.

By assignment it is urged that the court erred in finding that the Lawson contract was still in existence—that such finding was not supported by the evidence. If this contention is correct, the judgment must be reversed. The plaintiff predicated his case entirely upon the theory that the Lawson contract was still extant and that under it Lawson still had the exclusive right to manufacture and sell the various products in the designated areas. If the Lawson contract was still operative and he did have such exclusive rights, then the plaintiff got noth-

ing; but if the Lawson contract had been avoided, plaintiff got what he bargained for and he has no right to rescind. It thus becomes evident that plaintiff must at the outset show, if he is to succeed, that the Lawson contract was in full force and effect when plaintiff and defendant executed their contract.

Not only must he show this fact, but since he is endeavoring to set aside a contract on the ground that both parties were mistaken as to the existence of a fact in the light of which they contracted, he must show, not by a mere preponderance of evidence but by evidence which is convincing, that the parties were mistaken as to said fact. It is said that the same quantum of proof is required to show a mutual mistake of fact as is required to show fraud, i. e., that it must be "clear, convincing, and satisfying" or by such evidence as will "leave an abiding conviction. See 3 Black on Rescission, Sec. 683.

In *Gruber* v. *Baker*, 20 Nev. 453, 23 P. 858, 865, 9 L. R. A. 302, the court, in discussing the quantum of proof necessary, stated:

"The proof * * * must be satisfactory. It should be so strong and cogent as to satisfy the mind and conscience of a common man, and so to convince him that he would venture to act upon that conviction in matters of the highest concern and importance to his own interest. It need not possess such a degree of force as to be irresistible, but there must be evidence of tangible facts from which a legitimate inference of fraud may be drawn. As an allegation of fraud is against the presumption of honesty, it requires stronger proof than if no such presumption existed."

See also Starley v. Deseret Foods Corp., 93 Utah 577, 74 Pac. 2d 1221; 3 Jones Commentaries on Evidence, 2nd Ed., p. 2784.

This is an equity case. It is therefore our duty to determine from the record whether the quantum of proof meets the standard set out above. The evidence discloses that during the negotiations the details of the Lawson contract were given to the plaintiff. Plaintiff took a copy of the contract over night to examine its

provisions. A wire was sent by defendant's attorney to the Secretary of State of California to ascertain whether or not there was a corporation in good standing known as Soil-Aid Corporation of California. An answer was received to the effect that there was no corporation registered in California by the name "Soil-Aid Corporation" or any similar name. The plaintiff was shown a copy of a letter which had been written to Lawson and the Soil-Aid Corporation in which the defendant asserted that he considered the Lawson contract to be cancelled. The letter set forth eight separate grounds for the cancelation. Defendant's attorney was present during these negotiations and he informed the parties that he considered the Lawson contract to be cancelled and of no force and effect. On the basis of these facts both parties concluded that the Lawson contract had been avoided and that it was no longer in existence when they signed their contract. The plaintiff now asserts that they were mistaken in that conclusion and that this mistake was a mutual mistake of fact.

We will not in the face of the conduct of the parties themselves assume that their conclusion that the Lawson contract was avoided was factually incorrect. The reasoning of the court in *Ingalls* v. *Eaton*, 25 Mich. 32, is particularly apt here. It was there stated that:

> "Where parties contract concerning lands on the assumption that one of them is the owner, it is a reasonable presumption that they have first satisfied themselves by inquiry what the title is; and if a defect comes to their knowledge afterwards, the party complaining of it should point it out. The law cannot assume the defects exist when the parties concerned, who may fairly be supposed to have inquired into the facts, assume the contrary."

This same reasoning should apply to the case at bar, for it appears that the plaintiff and defendant each satisfied himself that the Lawson contract had been cancelled. The plaintiff is the party claiming mistake. The burden is clearly on him to establish that the

conclusion of fact reached by him and Peter, if it be deemed a fact, was a mistaken one. 3 Jones Commentaries on Evidence, supra.

The only proof offered was (1) testimony to the effect that a contract with Lawson had been executed; (2) that the $1,500 paid by Lawson under the contract had never been returned; and (3) a statement by the plaintiff that Lawson had told him that he still claimed that the contract was extant. This evidence under the measure of proof required does not establish the fact that the Lawson contract was in existence at the time that the Abbot contract was signed and therefore does not establish by convincing evidence that the parties were mutually mistaken in their belief that the Lawson contract was no longer in existence.

We have not been able to lay our hands on a case wherein the facts are similar or approach those in the instant case, but this contract, with its warranty that the defendant licensor had authority to grant the licenses and rights covered by the contract and the warranty that there were no other outstanding licenses or rights to sell these various products, is somewhat analogous to a contract to sell land which contains covenants of seisin and right to convey. At the common law a person seeking to recover for a breach of covenant of seisin could make out a prima facie case by merely showing the deed with the covenant of seisin; the burden of showing that there was no breach of the covenant was cast upon the grantor. This was because of the familiar rule of practice that when one has a peculiar opportunity of knowing, and is in possession of the evidence as to the fact in issue, he will be called upon to produce his evidence even though it results in requiring him to prove a negative. That such was the rule at the common law is shown by uniform authority. 4 Kent. Com. 479; 2 Devlin on Deeds, Sec. 892; Rawle on Cov., Sec. 65. In *Eames* v. *Armstrong*, 142 N. C. 506, 55 S. E. 405, 407, the

court explained the historical reason for casting the burden of proof on the grantor. In this regard the court stated:

"There being then no statute requiring the registration of deeds, so that the state of the title should be made public, the covenantor was allowed to retain such deeds for the very purpose of answering to the covenants. In Buckhurst's Case, 1 Co. Rep. 1, it was held that if the grantor sold with warranty he had a right to retain all deeds and evidences necessary to maintain his title. It was upon these reasons, and the peculiar rules of practice prevailing at common law, in such actions, that the burden of proof, in actions upon a covenant of seisin, was cast upon the defendant."

Under the codes, however, it is generally held that when there is an action for breach of covenant of seisin, and the defendant enters a general denial, the burden is on the plaintiff to prove the breach. See *Eames* v. *Armstrong,* supra; *Ingalls* v. *Eaton,* 25 Mich. 32; *Landt* v. *Major,* 2 Col. App. 551, 31 P. 524; *Zerfing* v. *Seeling,* 12 S. D. 25, 80 N. W. 140, on rehearing 14 S. D. 303, 85 N. W. 585; *Smith* v. *Nussbaum,* Mo. App., 71 S. W. 2d 82; *Frankel* v. *Blank,* 205 Iowa 1, 213 N. W. 597.

There is considerable doubt that it would be possible for the plaintiff to produce sufficient evidence to show that the Lawson contract was still extant without joining Lawson and having all the evidence heard. In *Anderson* v. *Bigelow,* 16 Wash. 198, 47 P. 426, 427, a somewhat similar problem was involved. There the action was brought to recover damages for an alleged breach of a covenant of warranty contained in a deed. The plaintiff, the grantee, claimed that the land had been dedicated to public use prior to the execution of the deed. In a suit between the plaintiff and a third person it was held that the land had been dedicated to the claimed public use. Plaintiff then sued his grantor for breach of covenant of warranty. The court in holding that the plaintiff had not established his case, stated:

"In fact, it may well be questioned whether a grantee who sees fit to voluntarily go into court is in a situation to have any rights

established in an action thus voluntarily brought, which shall have any effect in an action brought by him against his grantor; *and it is certain that a judgment rendered in such an action, to which the grantor is not a party, and in which he has not been legally notified to protect the title conveyed by his deed, is not even prima facie evidence in an action brought by the grantee against the grantor.*" (Italics added.)

In this case neither Lawson nor the Soil-Aid Corporation were before the court. No decision could have been made which would have in any way affected their rights. See *Lassiter* v. *Curtiss-Bright Co.*, 129 Fla. 728, 177 So. 201; *Quackenbush* v. *Cheyenne*, 52 Wyo. 146, 70 P. 2d 577. It is not necessary to decide whether or not the plaintiff could have made out a good case without having all the parties before the court. Suffice it to say that he did not sustain his burden of proof here. The evidence will not support the finding that the Lawson contract was still in existence. Judgment is reversed and the case is remanded for new trial. Costs to the appellant.

LARSON, McDONOUGH, MOFFAT, and WADE, JJ., concur.